CRANE CO., Plaintiff-Appellant,

v.

AMERICAN STANDARD, INC., et al., Defendants-Appellees.

AMERICAN STANDARD, INC., Plaintiff-Appellant-Appellee,

v.

CRANE CO., Defendant-Appellee-Appellant.

AMERICAN STANDARD, INC., Petitioner,

v.

Hon. Robert J. WARD, United States District Judge, and Crane Co., Respondents.

Nos. 437, 438, 602 and 603, Dockets 73-2273, 73-2462, 73-2640 and 73-2641.

United States Court of Appeals, Second Circuit.

Argued Nov. 19, 1973.

Decided Dec. 19, 1973.

David W. Peck, New York City (Sullivan & Cromwell, George C. Kern, Jr., Edward W. Keane and Robert M. Osgood, New York City, of counsel), for American Standard, Inc.

John W. Castles, 3d, New York City (Lord, Day & Lord, Michael J. Murphy, Pomerantz, Levy, Haudek & Block; Abraham L. Pomerantz and William E. Haudek, New York City, of counsel), for Crane Co.

Before LUMBARD, FRIENDLY and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge.

Four years after this court's decision in Crane Co. v. Westinghouse Air Brake Co., 419 F.2d 787 (2 Cir. 1969), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed. 2d 50 (1970), we find the combatants, Crane Co. (Crane) and American Standard, Inc. (Standard), in a Brobdingnagian procedural imbroglio that has prevented any progress in carrying out our decision.[1] During the week of September 10, 1973, this panel received a petition from Standard seeking the issuance of mandamus to require Judge Ward to vacate so much of his order of July 6, 1973, described below, as permitted Crane to seek damages on remand. When called upon for an answer, see F. R.App.P. 21(b), Crane informed us that Judge Ward was considering certification of his order under 28 U.S.C. § 1292(b), and we directed that if he did this, any motion for leave to appeal should be referred to us in light of the effect that grant of such leave would have on the mandamus petition.[2] Judge Ward then certified his order of July 6

1. The delay has been due in considerable part to the promotion to this court of Judge Mansfield, who wrote the first procedural opinion on remand, Crane Co. v. American Standard, Inc., 326 F.Supp. 766 (S.D.N.Y. 1971), and the untimely death of Judge McLean.

2. In the light of hindsight, it might have been wiser to refer both the petition for mandamus and the motion for leave to appeal to the panel that had decided Crane Co. v. Westinghouse Air Brake Co., *supra*. This was not suggested to us.

and a subsequent order of September 26, 1973, as well as an earlier order entered by Judge Mansfield (then in the District Court) on February 10, 1971. Crane moved that we grant leave to appeal and Standard joined in the request. Since it appeared that a ruling by this court on the important issues raised by the parties might prevent much waste of valuable time in the district court, we granted the motion. As the appeals permit us to examine all the issues free from any constraints concerning the limited office of mandamus, the petition for mandamus can be dismissed.

### I.

While we shall assume familiarity with Judge Smith's opinion when the case was last here, 419 F.2d 787, intelligibility requires some recounting.

The underlying controversy presents the familiar situation of a publicly-held company, here Westinghouse Air Brake, Inc. (Air Brake), confronted with a prospective take-over by a company not to its liking (here Crane) and turning to a more agreeable partner (here Standard). To enhance its prospects in the take-over effort, Crane had purchased large amounts of Air Brake stock; on February 20, 1968, it filed with the SEC statements under Schedule 14–B as required by Rule 14a–11(c)(1) to enable it to solicit votes for the election of Air Brake directors. Air Brake's stock was then selling on the New York Stock Exchange at about $36 per share. Shortly thereafter a majority of Air Brake's directors agreed, subject to stockholder approval, to merge Air Brake into Standard for a convertible preferred stock worth about $50. This caused the Air Brake stock to rise to $44.

Continuing the usual scenario, Crane countered with an offer, good until 5 p. m. on April 19, to exchange Crane stock and debentures, also worth approximately $50, for each Air Brake share.[3] At about the same time, Air Brake mailed proxies for a May 16 stockholders meeting seeking approval of its proposed merger into Standard. By April 10, Air Brake's stock had risen to $49. Both Crane and Standard were heavy buyers. On April 17, 1968, Crane, again following the familiar script, brought the first of two suits in the District Court for the Southern District of New York. Alleging various misrepresentations in Air Brake's proxy statement, the complaint sought injunctions against further solicitation and use of the proxies and "such other and further relief as to this Court may seem just and proper. . . ." The second (hereafter "the fraud action"), filed on May 6, 1968, sought to enjoin Standard from voting Air Brake stock or purchasing votes of Air Brake stockholders, from consummating the merger, and from engaging in any manipulative practices or other acts in violation of the Securities Exchange Act. The complaint did not seek damages but included a prayer for "such other and further relief as may be just and proper."

The two actions were tried together before Judge Ryan, the applications for a preliminary injunction being consolidated with a trial on the merits pursuant to F.R.Civ.P. 65(a)(2). No request was made for a jury trial. The trial began on May 21. This was five days after the Air Brake stockholders meeting, but the proxies were still being tallied at that time. We were told at argument that the judge received daily reports of the voting and that it was apparent before his decision that votes sufficient to authorize the merger had been obtained. On June 5, 1968, the judge dismissed both complaints; on June 7 the merger was consummated.

On Crane's appeal to this court, Standard prevailed on every point save one. This was a claim by Crane in the

---

3. All the transactions here at issue took place prior to enactment of the Williams Act, 82 Stat. 454 (1968), adding §§ 13(d)(3) and 14(d), (e) and (f) to the Securities Exchange Act.

fraud action relating to transactions in Air Brake stock by Standard on April 19, 1968. The transactions were a series of open market cash purchases of 170,200 shares of Air Brake at an average price of $49.08 per share accompanied by undisclosed sales of 100,000 shares to a well-disposed investment company at 44½ and of 20,000 shares to a well-disposed investment banking house at 44⅞. Standard contended that its purpose was simply to increase its voting position in Air Brake[4] while keeping its holdings of Air Brake shares below 10% in order to avoid problems under § 16(b) of the Securities Exchange Act and for other reasons. Rejecting that argument, the court concluded, 419 F.2d at 793, that Standard had intentionally created "the appearance of an extraordinary demand for Air Brake stock and a dramatic rise in market price, as a result of which Air Brake shareholders were deterred from tendering to Crane." The court held that this conduct violated § 9(a)(2) of the Securities Exchange Act, which makes it illegal to effect "a series of transactions in any security registered on a national securities exchange creating actual or apparent active trading in such security or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others," and that non-disclosure of the sales violated SEC Rule 10b–5(3) which makes it illegal "to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." Apparently because of Crane's later forced sale of the American Standard stock it received in the merger, 419 F.2d at 794, the court further concluded that Crane came within the class of persons whom § 9(e) protects against violation of § 9(b), to wit, "any person who shall

purchase or sell any security at a price which was affected by such act or transaction." Finally, the court held that under Vine v. Beneficial Finance Co., 374 F.2d 627, 634–635 (2 Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967), Crane met the "in connection with" requirement of Birnbaum v. Newport Steel Co., 193 F.2d 461 (2 Cir.) cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952).

On the basis of these conclusions, the court reversed the dismissal of the complaint in the fraud action. At two points in its opinion, it gave instructions concerning further proceedings in the case. After quoting a passage from Vine, supra, 374 F.2d at 635, to the effect that the plaintiff need not show he was misled if "there was deception which misled [other] stockholders and that this was in fact the cause of plaintiff's claimed injury," the court said, 419 F.2d at 797:

> Standard's deception caused injury to Crane. Crane's tender offer could only be successful if its value to investors was attractive in comparison with the indicated value of Air Brake on the New York Stock Exchange. The extent of the damage will have to be determined by the District Court, in fashioning an appropriate remedy, and the burden of proof thereon will be on Crane. It is sufficient that the causation requirement is satisfied here to the extent of imposing liability upon Standard for the consequences of concealing from the public material information relevant to the market value of Air Brake in a free market.

In the concluding paragraphs of the opinion, the court said, 419 F.2d at 803–804:

> We affirm the District Court's dismissal of the claim as to the Air Brake proxy statement; we reverse

4. We are told that Standard made its purchases on April 19 because that was the last day on which a purchase of Air Brake stock would carry the right to vote at the May 16 meeting if done on a "cash" basis rather than to disrupt Crane's tender offer, which Standard had reason to believe would be, and was, extended. The former point was strongly argued to but rejected by this court on the first appeal, 419 F.2d at 795.

the judgment below dismissing the claim based upon market manipulation and deception, and remand for a further determination in the District Court of the appropriate remedies. Without limitation, these remedies may include damages, if any, prospective injunctive relief, as well as appropriate retrospective relief, notwithstanding the consummation of the merger. See J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed. 2d 423, *supra*. The manipulation may be found to have deprived Crane of success in its tender offer in the free market to which it was entitled, in which case divestiture or separation of Air Brake may be required. Consummation of the transaction cannot be allowed to preclude any relief for violations of the securities laws.

We do not suggest that such a drastic result as divestiture or separation must necessarily be reached in this case. Crane must establish that any relief sought is equitably required, considering the effect on other shareholders and the diligence with which Crane sought to prevent consummation of the merger and to obtain delay in its implementation pending expeditious review of the denial of injunctive relief by the trial court. See discussion in Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937, 947–948 (2 Cir. 1969).

## II.

After denial of Crane's petition for certiorari, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970), battle was resumed in the district court, this time before Judge Mansfield.[5] Crane's disclosure of what the judge characterized as "multifarious claims for money damages," 326 F.Supp. at 769,[6] led Standard to move for an order "defining and limiting the issues." The court granted this, 326 F. Supp. at 776–777, "to the extent of striking as a non-jury issue the assessment of any money damages other than such amounts as may be required to render equitable relief effective." Judge Mansfield further directed that if Crane should move under F.R.Civ.P. 15 to amend its complaint to include other damages and such a motion should be granted, Standard's time for a jury demand—on the issue of liability as well as on the question of damages—should run from service of the amended complaint.

Apparently nonplused by this, Crane asked this court to mandamus the district judge. The court denied the application without calling upon Standard to answer. Crane then asked the court to clarify the mandate. This also was denied without opinion. Although Standard would have us draw inferences of approval from these unexplained actions, we decline to speculate as to the reasons for the court's denial of Crane's applica-

---

5. Judge Ryan had recused himself on Crane's request. Crane had alleged that his dismissal of the complaint necessarily involved a judgment concerning the innocence of Standard's conduct that would make it difficult for him to avoid the appearance of prejudice in presiding over the remand. Standard argues that Crane's request shows that it recognized that factual issues would have to be determined if damages were sought. But the request can be interpreted as indicating no more than that a judge who had thought there was no basis for any remedy at all was not the best suited to determine what the remedy should be. In any event, our concern is with what this court meant rather than with what Crane thought.

6. These were:

(1) the difference in value between Crane's 32% block of Air Brake stock, including the value of control, and the Standard shares which were received in exchange therefor after the merger of Air Brake into Standard, (2) similar damages with respect to Air Brake stock which Crane was prevented from acquiring as a result of Standard's alleged manipulation and deceit, (3) the value to Crane of control of Air Brake, (4) the loss which Crane allegedly suffered from the forced sale of its Air Brake stock, for antitrust reasons, subsequent to the merger, and (5) punitive damages.

326 F.Supp. at 769–770.

tions. This may have rested on the restricted scope of mandamus, on a belief that the proper remedy was an appeal under § 1292(b), or on other bases not apparent to us.

When Judge Mansfield became a member of this court in May 1971, the action was assigned to Judge McLean. Crane moved before him for leave to amend its complaint in the fraud action to include a damage claim and for reconsideration of Judge Mansfield's ruling that damages could be awarded only after a jury trial on the merits. Upon Judge McLean's death, these motions were transferred to Judge Ward—along with a related matter we must now describe.

As stated in our opinion, 419 F.2d at 791, Crane, under threat of a divestiture action to be brought by Standard under the antitrust laws,[7] sold, on June 13, 1968, all but 10,000 of the 740,311 shares of Standard convertible preferred stock it had received for its 32% interest in Air Brake, at a profit of several million dollars; later, it disposed of another 9,000 shares. Four days after the merger, Melvin Kritzler, an Air Brake stockholder, brought an action under § 16(b) against Air Brake, Standard, and Crane. Kritzler's complaint, filed prior to Crane's sale of its Standard shares, alleged that Crane had demanded an appraisal of its holdings in Air Brake immediately before the merger, and that the demand constituted a "sale" of the Air Brake shares under § 16(b). A second Air Brake stockholder brought suit shortly thereafter, complaining that Crane had violated § 16(b) by purchasing Air Brake shares and then exchanging them for Standard shares after the merger. He claimed that Crane also violated § 16(b) by selling the Standard shares less than six months after it had received them in the merger exchange. A third complaint was then filed, this time by a Standard stockholder, suing derivatively on yet another theory: that Crane's sale of Standard shares within six months of its purchase of Air Brake shares constituted a § 16(b) violation.[8] Finally, Standard instituted its own § 16 (b) action. It alleged generally that Crane was liable for the short-swing profits it had made on the entire sequence of transactions. Standard made no jury demand.

In response, Crane filed a third-party complaint, an answer in the Standard suit, and a motion to consolidate three of the § 16(b) actions against it. The third-party complaint, brought against the directors of Air Brake, alleged that they had conspired to expose Crane to possible § 16(b) liability, and that judgment should be granted against them for any liability that Crane should suffer under § 16(b). In its answer to Standard's suit, Crane claimed that the merger exchange was neither a purchase nor a sale of securities under § 16(b), and that its sale of its shares of Standard under threat of antitrust action was similarly not a § 16(b) sale. Crane further alleged that the Air Brake and Standard directors had planned the merger to expose Crane to possible § 16(b) liability, and that Standard was therefore estopped to assert its § 16(b) claim.

Judge McLean dismissed the Standard stockholder's suit and directed that the actions brought by the two Air Brake stockholders be consolidated with Standard's suit and an amended complaint served. After Standard filed an amended complaint on behalf of all three plaintiffs, Crane answered much as it had originally, but added as a further defense and counterclaim that it had suffered more than $50 million in damages due to the same actions of Air Brake and Standard that Crane had alleged in the initial fraud action. Standard re-

---

7. Crane was in direct competition with Standard, although it had not been with Air Brake.

8. All three stockholders alleged—apparently without basis—that a request that Air Brake or Standard directors bring suit would be futile and that the plaintiffs should therefore be excused from the requirement in § 16(b) that the stockholder request the issuer to bring suit and then wait 60 days before initiating his own action.

plied that this counterclaim was barred by Judge Ryan's judgment in the fraud suit, which was then on appeal. After much procedural maneuvering, Crane filed another third-party complaint against the former Air Brake directors in late 1969, again asking indemnity from them should Crane be found liable on the § 16(b) claims. The third-party defendants answered, as had Standard, that Crane's claim was barred by the judgment in the fraud action before Judge Ryan.

While all this was going on, there were pending before Judge Lasker motions by both Crane and Standard for summary judgment with respect only to the § 16(b) claim against Crane. Just prior to our decision in Abrams v. Occidental Petroleum Corp., 450 F.2d 157 (2 Cir. 1971), the judge denied Crane's motion and granted Standard's, 346 F. Supp. 1153 (S.D.N.Y.1971); after our decision he withdrew his opinion for further consideration but subsequently adhered to it in a supplemental opinion, 346 F.Supp. 1165 (1972).[9] Apparently Crane has not yet sought to appeal. Very likely, because of the undetermined counterclaim, it could not do so without obtaining either a certificate under F. R.Civ.P. 54(b), which would expose it to execution unless it filed a large supersedeas bond, or leave to appeal under 28 U.S.C. § 1292(b), which might well be desirable in order to get this issue on its way to final determination.

Standard next moved to dismiss Crane's counterclaim in the § 16(b) action. It argued that Crane should not be permitted to split its cause of action for the alleged pre-merger fraud into one suit for equitable relief and an unrelated counterclaim for monetary recovery.[10] In an opinion dated July 6, 1973, Judge Ward denied Standard's motion, holding that Crane had not split its cause of action because it could not have sued for damages prior to the consummation of the merger. He also ruled that Standard was entitled to a jury trial of Crane's counterclaim both because of Kritzler's jury demand on the § 16(b) claim (on which Judge Lasker had already granted Standard summary judgment against Crane), and because denial of a jury trial on the counterclaim would circumvent Judge Mansfield's decision that if Crane wished damages in the fraud action, Standard was entitled to have all issues relitigated before a jury. By a further order of September 26, Judge Ward denied motions by Crane for leave to add to its counterclaim in the § 16(b) action an allegation that the merits had already been determined by this court's judgment in the fraud action and for reconsideration of Judge Mansfield's decision.

### III.

The starting point for considering how to untie the knots in which this case has become entangled is this court's

---

9. Our decision was later affirmed sub nom. Kern County Land Co. v. Occidental Petroleum Corp., 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973).

10. This argument runs as follows: Crane was bound to assert all its claims concerning the April 19, 1968 manipulations in a single action or be barred by the doctrine of merger, a branch of the principle of *res judicata*. In the fraud action before Judge Ryan, Crane sought no damages. Hence, it cannot recover them now, either on the reversal and remand of Judge Ryan's dismissal, despite the court's explicit declaration to the contrary, or in a counterclaim to Standard's action under § 16(b). Although there are many answers to this ingenious attempt to

snatch victory from the jaws of defeat, a sufficient one is that, in contrast to issue preclusion (collateral estoppel), the rule of merger applies only to final judgments. See Restatement of Judgments 2d, § 41 (Tent. Draft No. 1, March 28, 1973). There has yet been no final judgment in the fraud action, and a claim for damages there can be pursued either without amendment of the complaint, as we hold, or by an amendment of it. Crane's failure to submit proof of damages at a time when it was seeking to avert them by enjoining an event does not prevent an appellate court, on a reversal, from allowing such proof to be submitted after the event has occurred, 28 U.S.C. § 2106.

decision of four years ago, from which we have quoted the most pertinent portions. With the greatest respect for our brother Mansfield, we cannot understand why a remand to the district court solely to determine the appropriate remedies for the violations found to have been established, which "may include damages, if any," should not be read to mean precisely what it said, rather than construed to require an amendment of the complaint and relitigation of the merits to a jury before damages could be awarded. If resort to the context were required, it would strengthen rather than weaken the meaning that emerges so plainly from the words. One indication is the court's reference to J. I. Case v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Citing Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940), the *Borak* Court approved a ruling by the Seventh Circuit, 317 F.2d 838, 849 (7 Cir. 1963), that, in a suit in equity to enjoin unlawful proxy solicitation under § 14(a) of the Securities Exchange Act with respect to a merger since consummated, a district court "has jurisdiction under Section 27 to award damages or such other retrospective relief to the plaintiff as the merits of the controversy may require," and disapproved contrary intimations in Dann v. Studebaker-Packard Corp., 288 F.2d 201 (6 Cir. 1961). In Mills v. Electric Auto-Lite Co., 396 U.S. 375, 386–389, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), the Court reaffirmed the right of a district court to award damages where a merger had been consummated in the face of a pending equity suit alleging a misleading proxy solicitation. While that case was decided after the decision here, the language in the concluding portion of Judge Smith's opinion presages Mr. Justice Harlan's in *Mills*. The reference to damages was particularly meaningful because of the doubt expressed whether "such a drastic result as divestiture or separation must necessarily be reached in this case," 419 F.2d at 804. Damages, in other words, were considered a less onerous equitable remedy against Standard than what the district court had power to decree. The statement that even as to money damages, "Crane must establish that these are equitably required," indicates that the court was not thinking of a jury trial—something that no one had even suggested at that stage.

▪ Apart from all this, there was no occasion for belaboring the point that damages could be awarded under the complaint in the fraud action. This court had held many years ago that when a district court has denied an injunction against a corporate transaction which was then consummated, an appellate court can direct the district court, on a finding of merit in plaintiff's claims, to order the undoing of the transaction or, if it deems that course preferable, to award damages under a prayer for other and further relief. Subin v. Goldsmith, 224 F.2d 753, 761–762 (2 Cir.), cert. denied, 350 U.S. 883, 76 S.Ct. 136, 100 L.Ed. 779 (1955).[11]

▪ To our minds, this court's mandate in the appeal from Judge Ryan's decision is clear. Taking the largely undisputed facts concerning Standard's conduct on April 19, 1968, the court drew conclusions, differing from Judge

---

11. Judge Mansfield found significance in the lack of discussion of damages in the briefs before this court. Crane's brief concluded on the note that power was not limited to prospective injunctive relief but included "the power to award whatever retrospective relief may be appropriate despite consummation of the merger," citing *Borak* and a lower court decision in *Mills*. It argued that, since the trial court had dismissed the complaint, it had never considered what alternative relief "such as rescission or damages would be appropriate after consummation of the merger." Standard's brief was naturally devoted to defending its position on the merits. Crane's reply brief emphasized the need for an "effective" and "appropriate" retrospective remedy "including without limitation, damages to Crane." These extracts, together with this court's own language, are ample to show that the possibility of damages, if Crane could show itself equitably entitled to them, was in everyone's mind.

Ryan's, that Standard had violated § 9(a)(2) and Rule 10b–5. It did not intend those conclusions, reached after full briefing and study of the record, to be subject to reexamination in the district court [12] even if that court should decide that damages were an appropriate remedy. And it meant that decision and the determination of the amount of damages, if any, to be made, as all other decisions in this equity action had been, by a district judge. If we had any doubts on the subject, which we do not, the court's enumeration of the considerations that would have to be weighed with respect to relief and its references to *Borak* and this court's opinion in Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937, 947–948 (2 Cir. 1969), would entirely dispel them.

### IV.

We could terminate at this point since it is fundamental that a district court must carry out the mandate of a court of appeals, even if the mandate was in error, Sibbald v. United States, 37 U.S. (12 Pet.) 488, 492, 9 L.Ed. 1167 (1838); FCC v. Pottsville Broadcasting Co., 309 U.S. 134, 140, 60 S.Ct. 437, 84 L.Ed. 656 (1940); Briggs v. Pennsylvania R. R., 334 U.S. 304, 306, 68 S.Ct. 1039, 92 L.Ed. 1403 (1948); Munro v. Post, 102 F.2d 686, 688 (2 Cir. 1939). The remedy of the aggrieved party is to seek a modification of the mandate, which Standard has not expressly done. However, it is not in anyone's interest

for us to be this technical. Placing decision on that basis would simply produce another round of motions in a case already plagued with too many, and if the mandate were in error, it should be corrected now. We shall therefore proceed as if Standard had sought from us a modification of the mandate on the ground that if the mandate meant what it clearly did, it violated the principles concerning the right to jury trial laid down in Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L. Ed.2d 988 (1959), and Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962).[13] In this section of the opinion we shall deal with Standard's claim that it is entitled to a jury trial on the merits if Crane is to have any monetary relief; in the next section we shall discuss the question, not specifically raised by Standard, whether it is entitled to a jury trial limited to the amount of any such relief.

On the first point, Standard's error lies in confusing cases of two very different sorts: those where the question of the proper order for trying jury and non-jury issues arises before any trial has occurred, as in *Beacon* and *Dairy Queen,* or where an issue properly triable to a jury has been tried by a judge over a party's seasonable protest, as in Heyman v. Kline, 456 F.2d 123 (2 Cir.), cert. denied, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972); and those where the action has been properly tried to a judge and damages enter the case only

12. Judge Mansfield expressed doubt, 326 F. Supp. at 775, whether if Crane's action had called for a jury trial, "the Court of Appeals would hold that summary judgment in favor of Crane is warranted or that a court is entitled to substitute its inferences from the cold printed record for the findings of a jury made after observing the witnesses and appraising their credibility." We are not required to speculate about this. Here the action solely in equity had been tried to a judge, without any jury demand, and this court was proceeding in accordance with the principle, recognized in Stevenot v. Norberg, 210 F.2d 615, 619 (9 Cir. 1954), and other cases, see 5A Moore, Federal Practice ¶ 52.03 [2], that "When a [judge's] finding is essentially one dealing with the effect

of certain transactions or events, rather than a finding which resolves disputed facts, an appellate court is not bound by the rule that findings shall not be set aside, unless clearly erroneous, but is free to draw its own conclusions."

13. Judge Mansfield was strongly influenced by this argument. He was confident, as we are, "that the Court of Appeals would not want us to award damages which we are prohibited by the Constitution from assessing without first granting to Standard a jury trial," 326 F.Supp. at 771. Our disagreement with our esteemed colleague lies in our belief that there is no such prohibition on the facts here.

because defendant's acts subsequent to the judgment require retrospective relief, possibly including damages, rather than the prospective relief initially sought.

It bears repeating that the fraud action was brought on May 6, 1968, and that apart from the general prayer "for such other and further relief as may be just and proper," the complaint sought only prospective injunctive relief. Issue was joined on May 8, 1968. No one suggests that within 10 days thereafter, either party could legitimately have served a jury demand under F.R.Civ.P. 38(b). Standard's position is rather that by the time the trial commenced on May 21, it was fairly evident that the merger would be consummated and that this became increasingly likely as the trial progressed; hence, it argues, if Crane wished to be eligible to recover damages, it should have asked the judge to abort the trial and start all over again with a jury.[14]

■■ We see no reason for holding that Crane was required to do this. Consummation of the merger, prospective or actual, would not foreclose the availability of equitable relief. It would simply mean that such relief must be retrospective, as the Supreme Court had recognized in *Borak* and this court did in its previous opinion, 419 F.2d at 803–804. Neither would such consummation transform what had been a suit in equity into one at least partially at law simply because the chancellor might determine monetary relief to be a more appropriate remedy than a retrospective injunction. *Beacon* and *Dairy Queen* doubtless require courts to give more thought than previously to the permissible extent of equity "clean-up" jurisdiction, see 5 Moore, Federal Practice ¶ 38.19 [2] at 1726. Yet where the claims asserted and the remedies sought are wholly equitable, the prospect that later developments may render it appropriate to award monetary relief under a

general prayer in substitution for or in addition to an injunction does not require a plaintiff to take such extraordinary action as Standard suggests, under pain of forfeiting any right to ask the chancellor to award damages if he deems these to be more appropriate relief than an injunction. *Dairy Queen* dealt with an initial claim for a money judgment, a claim "wholly legal in its nature however the complaint is construed," 369 U.S. at 476–477, 82 S.Ct. at 899. The treble damage counterclaim in *Beacon Theatres* was even more clearly such.

■ Moreover, if the character of the suit had in fact so changed as to make it "legal" in nature, which we think it had not, the burden of demanding a jury trial should be on the party now complaining of the lack of one. Standard made no such demand and raised no issue on this score until after this court's decision. We thus find no need to consider Crane's further argument that it did not acquire standing to recover damages until after the trial was concluded and Standard's response thereto.

With so much established, the Supreme Court decisions cut in a way opposite to that for which Standard argues. The very basis of *Beacon Theatres* was that the effect of a trial of the equitable claim "could be, as the Court of Appeals believed, 'to limit the petitioner's opportunity fully to try to a jury every issue which has a bearing upon its treble damages suit,' for determination of the issue of clearances by the judge might 'operate either by way of res judicata or collateral estoppel so as to conclude both parties with respect thereto at the subsequent trial of the treble damage claim.'" 359 U.S. at 504, 79 S.Ct. at 953. It was to avoid this preclusive effect that the Supreme Court directed initial trial of the legal counterclaim. Here the merits of the fraud action have been tried by a judge in equity, without objection or basis for one, and reviewed on appeal. This court's

---

14. Judge Mansfield intimated that something of the sort was indicated by the Advisory Committee Note to F.R.Civ.P. 65(a)(2), see 326 F.Supp. at 772. We disagree.

determination in its opinion on appeal stands beyond challenge in the fraud action and precludes relitigation by the parties of all issues resolved there.

█ This point as to the true bearing of *Beacon* and *Dairy Queen* is forcefully made in an able note by Professor David L. Shapiro and Daniel R. Coquillette, The Fetish of Jury Trial in Civil Cases: A Comment on Rachal v. Hill, 85 Harv. L.Rev. 442, 445–48.[15] The authors continue with a further discussion, *id.* at 448–55, which is highly pertinent here. The framers of the Seventh Amendment sought to preserve the right to a jury trial in civil cases as it had existed "at common law." The authors cite abundant eighteenth century precedent, on both sides of the Atlantic, that a decree in equity was recognized as having preclusive effect in a subsequent action at law between the same parties. With the merger of law and equity effected by the Federal Rules of Civil Procedure, a judgment in a suit which had been properly brought and tried as a suit in equity must govern all future proceedings between parties to which collateral estoppel would normally apply.

█ The direction for a jury trial of Crane's counterclaim in the § 16(b) action thus was error since this court's judgment precludes Standard from controverting it on the merits. And, for reasons already indicated, there was no room for relitigation on the merits in the fraud action and no need for Crane to amend its complaint to enable it to re-cover damages if the court should conclude it was equitably entitled to them.

## V.

█ At argument we raised the question whether, assuming that relitigation of the merits was precluded even with respect to damages, Standard should be accorded a jury trial on their amount, an issue as to which our prior decision plainly has no preclusive effect.

While neither side displayed any enthusiasm for this idea, we would not wish to hold Standard's counsel to a position taken in the course of an argument without opportunity for full consideration. However, we can readily understand why the prospect of a jury trial on damages alone would not be attractive to anyone. The reference in our previous opinion to damages as a possible remedy did not at all place Crane in a position equivalent to that of a defrauded seller or buyer who is clearly entitled to damages which usually can be readily calculated. As shown by Crane's particulars, see note 6 *supra*, the task of calculating what damages Crane may have suffered by the one act of wrong-doing found to have been committed by Standard would demand prodigies of prophecy and measurement beyond the capacity of jurors and perhaps of a judge. While this court found "that the causation requirement is satisfied here to the extent of imposing liability upon Standard for the consequences of concealing from the public material infor-

---

15. Rachal v. Hill, 435 F.2d 59 (5 Cir. 1970), cert. denied, 403 U.S. 904, 91 S.Ct. 2203, 29 L.Ed.2d 680 (1971), relied on by Standard, held that defendants in a private damages action under the Securities Acts were not collaterally estopped from relitigating liability by an earlier finding that they had violated the law in an SEC injunction suit, since such a disposition would deprive them of trial by jury. The case is distinguishable on the facts since it dealt with two separate proceedings with different plaintiffs. However, along with Professor Shapiro and Mr. Coquillette, we are not at all sure that *Rachal* was correctly decided. As indicated in the text, equity decrees in the eighteenth century had preclusive effect in actions at law, and the erosion of the mutuality requirement for collateral estoppel, recognized in *Rachal*, 435 F.2d at 61–63, and later evidenced by the Supreme Court's decision in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), arguably should apply to them to the same extent as to judgments at law. See 85 Harv.L.Rev. at 454–55.

mation relevant to the market value of Air Brake stock," 419 F.2d at 797, it did not determine what these consequences were. Certainly it is not to be merely assumed that but for Standard's acts on April 19, 1968, Crane's tender offer would have succeeded and the merger would have failed. Mr. Justice Harlan emphasized in *Mills, supra,* 396 U.S. 375 at 389, 90 S.Ct. 616 at 624, that in cases like this "damages should be recoverable only to the extent that they can be shown." Quite conceivably a judge here might find the chain of causation so dubious and the task of determining damages so elusive as to lead him to decide that, except for some items that may be readily provable, he could not properly award anything save perhaps attorneys' fees, see *Mills, supra,* 396 U.S. at 389–397, 90 S.Ct. 616.[16] Lurking in the background are the issue of Crane's § 16(b) liability, still unresolved on appeal, and the anomaly seemingly inherent in a reduction of the merged corporation's recovery under that section because of wrong-doing by one of its components toward the party charged with a § 16(b) violation. It would be hard to think of tasks less appropriate for performance by a jury than the determination of the amount of damages, if any, in a case like this.

These considerations, of course, would not be decisive if Standard is entitled to have the issue of damages tried to a jury as of right and wished to have that issue so determined, although they may cast doubt on whether the Seventh Amendment or the Rules of Civil Procedure should be construed to demand such a result. We do not read *Beacon Theatres* or *Dairy Queen* to require this. Fundamental to both decisions, as we have indicated, was the fact that the claim which the Court insisted be tried first to a jury was a claim for money to which the party seeking a jury trial, if correct in its legal position, was absolutely entitled (as in *Beacon*) or to which it had an absolute defense (as in *Dairy Queen*). Although the complaint in *Dairy Queen* had cast the money claims "in terms of an 'accounting,' rather than in terms of an action for 'debt' or 'damages,'" the Court held that "the constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings." 369 U.S. at 477–478, 82 S.Ct. at 900. Before reaching its decision, the Court satisfied itself that the request for an accounting posed no issues not readily determinable by a jury. 369 U.S. at 478–479, 82 S.Ct. 894, 900.

Much more important than the formidable difficulties in fixing damages in this case, to which we have alluded, is that the question whether to award any at all rests in a discretion which only the chancellor can exercise. Judge Smith made this evident when he concluded the previous opinion by saying, 419 F.2d at 804, that "Crane must establish that any relief sought is equitably required, considering the effect on other shareholders and the diligence with which Crane sought to prevent consummation of the merger and to obtain delay in its implementation pending expeditious review of the denial of injunctive relief by the trial court." At the argument before us Standard's counsel referred expressly to Crane's failure to seek a stay of Judge Ryan's denial of an injunction, which, if granted would have permitted any relief to be prospective only. Such a factor goes to the equity of now affording Crane retrospective relief, whether injunctive or monetary; decision of that contention calls for the discretion of the chancellor. Similarly, while Standard is precluded by our previous opinion from relitigating its violations, it remains free to argue both the questions of their consequences, discussed above, and the

---

16. Needless to say, we are not passing on the propriety of granting the plaintiff attorneys' fees in this case; this question, in the first instance, is for the district court.

degree of its malfeasance as bearing on the extent of the relief to be accorded.[17] We do not believe that in *Beacon Theatres* or *Dairy Queen* the Court had any intention of retracting or diminishing the force of Mr. Justice Douglas' classic remark in Hecht Co. v. Bowles, *supra*, 321 U.S. at 329, 64 S.Ct. at 592, concerning "the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case" by requiring a judge to relinquish to a jury the shaping of relief in an action that was properly begun and tried solely as a suit in equity for injunctive relief simply because subsequent events may have put a whiff of money in the air.

We therefore direct the district court to get on with the task which the concluding paragraph of our earlier opinion directed it to perform. Perhaps a good first step would be to attempt to arrange for appellate consideration of Judge Lasker's grant of summary judgment against Crane on the § 16(b) claim, unless Crane accepts this as correct, which we gather it does not. We would think it more appropriate that the remedy to be afforded Crane for the violations of § 9(a)(2) and Rule 10b–5 by Standard which were found in our earlier opinion should be prescribed in the fraud action (the complaint in which we hold not to require amendment) rather than on Crane's counterclaim in the action under § 16(b). The district court could then consider Crane's liability under § 16(b), if any, in determining the proper remedy for Standard's violations. The orders of Judges Mansfield and Ward are therefore reversed to the extent that they are inconsistent with this opinion. As stated at the outset, Standard's petition for mandamus is dismissed. Crane may recover its costs.

17. This was made evident by the reference to the portion of the opinion in Electronic Specialty Co. v. International Controls Corp., *supra*, 409 F.2d 937 at 947, where, after quoting from Hecht Co. v. Bowles, 321 U.S. 321, 329–330, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944), we cited "the admonition of an equally exalted authority whose 'object all sublime' was to 'let the punishment fit the crime.' "