**INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION, Plaintiff,**

v.

**GENERAL TELEPHONE & ELECTRONICS CORPORATION et al., Defendants.**

**No. C–128–G–71.**

United States District Court, M. D. North Carolina, Greensboro Division.

Aug. 1, 1974.

977

## MEMORANDUM ORDER

HIRAM H. WARD, District Judge.

This decision decides those questions left open in International Tel. & T. Corp. v. General Tel. & E. Corp., 369 F. Supp. 316 (M.D.N.C.1973). In the prior decision, it was held that plaintiff, International Telephone and Telegraph Corporation (ITT), had split its cause of action by bringing this treble damage action pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, after it had sought and obtained injunctive relief in the case of International T. & T. Corp. v. General Tel. & Elect. Corp., 351 F. Supp. 1153 (D.Hawaii 1972) (Hawaii action). That ruling was made applicable only to defendant, General Telephone & Electronics Corporation (GTE). Due to a paucity of facts concerning the issue of whether GTE's subsidiaries were in privity with GTE, which was the only one of these defendants named in the Hawaii action, the Court expressly de-

clined to give the subsidiaries the benefit of the decision. Thereafter the parties entered into a comprehensive stipulation of facts concerning the issue of privity and now agree that there are no material facts in dispute in regard to that issue.

The parties agree that at all times since the filing of the Hawaii action that GTE owned all of the voting stock of GTE Service Corporation (GTE Service), GTE Automatic Electric, Inc., (AE), and General Telephone Company of the Southeast (Southeast)[1]—the GTE subsidiaries which are the remaining defendants in this suit. GTE is a holding company. It conducts its telephone manufacturing and operating activities through its subsidiaries. It has no employees, only officers. GTE Service provides staff services for GTE's manufacturing and operating companies.[2] AE manufactures various types of telephone equipment. Southeast is one of thirty-three GTE subsidiary-operating companies within the continental United States and Hawaii. The parties agree that the subsidiaries are not alter egos of GTE or of each other.

In an amended complaint filed in 1968 in the Hawaii action, ITT asked that GTE divest itself of five operating companies (not including Southeast) as well as some manufacturing subsidiaries.[3] It also asked for divestiture of "such other General System telephone operating company, or groups of operating companies, as the Court may deem appropriate for the purpose of restoring effective competition in the manufacture and sale of telephone equipment." The reason for seeking this relief was that ITT alleged that GTE, acting through GTE Service, controlled the purchasing policies and practices of the operating companies and exercised the control for the benefit of AE, thereby violating Section 7 of the Clayton Act, 15 U.S.C. § 18, and Section 1 of the Sherman Act, 15 U.S.C. § 1.

In its August, 1970, trial brief in the Hawaii action, ITT further defined the relief which it sought. It requested divestiture of all GTE operating companies acquired since 1950. Those companies would include Theodore Gary and Company which, at the time that company was acquired by GTE, included the bulk of the assets that now comprise Southeast. ITT also sought to limit the amount of "in-house" equipment purchased by the remaining undivested GTE operating companies, to end discriminatory purchasing practices, to limit the expansion of its manufacturing subsidiaries, and to prohibit GTE's acquisition of more operating companies.

The subsidiaries herein involved participated in the trial of the Hawaii action as follows. GTE answered interrogatories and entered into stipulations based on information obtained from the files of GTE Service, AE, and Southeast. Tens of thousands of documents were produced pursuant to requests under Rule 34, Federal Rules of Civil Procedure, from the files of GTE-Service, AE, and Southeast without the issuance of third party subpoenas. High ranking officers and engineers of GTE-Service, AE, and Southeast voluntarily attended depositions in the Hawaii action pursu-

1. On May 31, 1972, General Telephone Company of Alabama was merged into Southeast. This stipulation clarifies the confusion in the earlier opinion as to this matter. See International Tel. & T. Corp. v. General Tel. & E. Corp., 369 F.Supp. at 318.

2. As stated in stipulation number 9:
"These services encompass legal advice and counsel; assistance in financial planning and the sale of securities; advice on dealing with the various governmental agencies which regulate telephone companies; administration of the subsidiaries' insurance and pension programs; and assistance for GTE's telephone operating companies in all major facets of their operations, including their engineering, plant, commercial and traffic functions. At all times since the Hawaiian action was filed, GTE-Service has been a non-profit corporation, which recovered its expenses by assessments allocated among GTE's operating subsidiaries, and all of the officers of GTE have held the same offices in GTE-Service."

3. *Id.*, 369 F.Supp., n. 3 at 319.

ant to notice of service on GTE and agreement with GTE's trial counsel, and without the issuance of third party subpoenas. The specific damage complained of in this suit concerns the cancellation of an order for ITT to supply telephone equipment. The facts surrounding this incident were the subject of document discovery from Southeast's files and depositions of Southeast's personnel. Exhibits concerning this transaction were introduced at the trial in the Hawaii action; ITT called one of its own people to testify concerning this order at the trial; and GTE called the president of Southeast, as well as introducing the depositions of the Chief Engineer of Southeast and of an ITT sales representative. The evidence concerning this order was used by ITT to prove the "in-house" purchasing of GTE and to show the anticompetitive effect of GTE's vertical integration. The cancellation of the order was the subject of a one paragraph finding in the Hawaii action. (351 F.Supp. at 1189). After the liability of GTE in the Hawaii action had been established, GTE offered to present evidence on the question of relief. It proposed to offer the testimony of witnesses from AE and GTE's operating companies, including Southeast.

Final judgment in the Hawaii action was issued on December 13, 1972. (See 351 ·F.Supp. 1241–1249). It provided among other things for the divestiture by GTE of AE and of certain operating companies. The parties stipulate that the divestitute order includes GTE's acquisition of Theodore Gary and Company, or of operating companies of similar size. Since the bulk of Southeast's assets came from GTE's acquisition of Theodore Gary and Company, Southeast may well be subjected to divestiture. The operating companies, both those divested and those not divested, were compelled to submit yearly reports to the court and also were required to take other affirmative action.

The parties agree that the Hawaii action was controlled by GTE and that GTE-Service, AE, and Southeast did not control the Hawaii action. However, they also stipulate that "GTE controlled the Hawaiian action on behalf of its subsidiaries, including GTE-Service, GTE-Southeast, and GTE-AE, to the extent they were affected by the decree entered in the Hawaiian action." Trial counsel in the Hawaii action are also trial counsel for GTE, GTE Service, AE, and Southeast in this action.

At all times relevant to this case, GTE had the financial resources to pay in its entirety the amount of $6,000,000 in treble damages which ITT now seeks to recover in this action. Thus had ITT sought and recovered in the Hawaii action the damages which it now seeks in this action, GTE could have satisfied the judgment.

■ The sole issue before the Court is whether GTE's subsidiaries should have the benefit of the Court's previous decision on res judicata to the effect that ITT has split its cause of action and thus is barred from now proceeding against GTE. In the Hawaii action, only GTE and Hawaiian Telephone Company were named as defendants. None of the defendant subsidiaries here were ever served with process. In fact, Southeast could not be served there. Thus none of the defendant subsidiaries could have been bound by an in personam judgment rendered in the Hawaii action. Zenith Radio Corp. v. Hazeltine Research, 395 U.S. 100, 110, 89 S.Ct. 1562, 23 L.Ed.2d 129, 141 (1969) (Zenith I).[4] However, the doctrine of res

---

4. The question of jurisdiction is to be distinguished from the question of privity. Normally a person must have certain minimum contacts within a state in order for a court to have jurisdiction over the person. That does not mean that a judgment obtained in an action cannot be enforced against a nonparty over whom the court did not have personal jurisdiction. If the nonparty were in privity with a party to the judgment, and it is established that there was privity, then the judgment would be fully operative against the nonparty. However, before that occurred, there would have to be court proceedings to determine whether privity in fact existed. This could only be done "in a court

judicata applies not only to named defendants in a prior action, but also to their privies. International Tel. & T. Corp. v. General Tel. & E. Corp., *supra*, 369 F.Supp. at 329. The questions which remain to be answered are whether the subsidiaries were in privity with GTE in the Hawaii action, and whether the doctrine of res judicata, as it applies to prohibiting the splitting of a cause of action, would be best served by giving the subsidiaries the benefit of this Court's previous ruling.

■ The cases in which privity between persons has been found to exist may be generally divided into two categories. A privity of estate exists when there is either a concurrent or successive relationship to the same right of property. A privity of interest exists when there is a representation of the same person or there is substantial identity between the parties. 1B, Moore's Federal Practice, ¶ 0.411[1] (1974). One or more of these relationships may be present in the same case.

■ In the present case, the subsidiary defendants contend that they are in privity with their parent GTE because of their interest and participation in the Hawaii action. As stated in 1B, Moore's Federal Practice, ¶ 0.411[6], pp. 1552–59, the rule is:

> If a non-party who thus participates in litigation has an interest sufficiently close to the matter in litigation, and has adequate opportunity to litigate in support of or in defense against the cause of action on which the suit is based, the policies underlying the doctrine of judicial finality require that the participating non-party should be bound by the resulting judgment to the same extent as though he were a party to the action. And if his opponent had knowledge of the non-party's participation, the same policies require that the opponent should be bound by a judgment favorable to the non-party's interest, in other litigation between the opponent and the participating non-party.

. . . . . .

At least three types of interest have been considered sufficient to bring a participating non-party within the conclusionary rule. [1] A legal right, interest or duty dependent wholly or in part on the cause of action before the court for adjudication . . . .

. . . . . .

■ . . . [A] proprietary right that will be affected favorably or detrimentally by the outcome of the litigation.

. . . . . .

■ . . . [W]hen the non-party has some legal right, interest, or duty dependent on a question of fact or mixed fact and law that is in issue in the suit.

The interest of the subsidiaries, GTE Service, AE, and Southeast, in the Hawaii action touches or resembles all three types of interest. Their interest in the Hawaii action was substantial. AE and Southeast faced the prospect of an involuntary separation from their parent. Subject to appeal, the threat is a fact for AE, and an impending reality for Southeast. This relationship with GTE, if not a legal right, at least amounts to a tolerance permitted by the law. Thus their association with GTE has the appearance of being both a legal right or interest and a proprietary interest. It is of substantial benefit to the companies. Because of it they enjoy, among other things, a favorable advantage in their purchasing and selling of equipment, and in operational and financial planning. Whatever the exact nature of the interest, the Hawaii action threatened those rights or interests. In addition, the Hawaii action encompassed questions of fact or mixed fact and law

---

with jurisdiction over that [person]." *Zenith I, supra*, 395 U.S. at 111, 89 S.Ct. at 1570, 23 L.Ed.2d at 141. Since this Court has personal jurisdiction over Southeast, as well as over GTE Service and AE, it has the authority to adjudicate the issue of res judicata as it relates to them.

which could be determinative of issues in subsequent damage suits. (See footnote 7, *infra*, for a discussion of the res judicata effects of the Hawaii action in the instant case.) Thus it was to the benefit of the subsidiaries to vigorously resist ITT in the Hawaii action whether they were named as parties or not.

The identity of interest which the subsidiaries had with GTE in the Hawaii action presents many facets. One of these is the joint interest the subsidiaries had in maintaining their association with GTE. The relationship of the subsidiaries to the parent GTE has some similarity to that of beneficiaries to their fiduciary. If a true fiduciary relationship did exist, that would, of course, be a basis for applying the doctrine of res judicata. *See* Sea-Land Services v. Gaudet, 414 U.S. 573, 94 S. Ct. 806, 39 L.Ed.2d 9, 26 (1974); Chicago R. I. & P. R. Co. v. Schendel, 270 U. S. 611, 46 S.Ct. 420, 70 L.Ed. 757 (1926). In this case, GTE controlled the Hawaii action on behalf of the subsidiaries to the extent that they could be affected by a judgment. While GTE had an interest in avoiding a judgment which would require divestiture, all of the subsidiaries also shared a common interest in the right to association. Thus when GTE protected the rights of the subsidiaries in the Hawaii action, it acted much like a fiduciary, even though its own personal stake in the outcome of the Hawaii litigation may make it inappropriate to term it such.

The subsidiaries themselves had an independent interest in the outcome of the Hawaii litigation. In this case, unlike Litchfield v. Crane, 123 U.S. 549, 8 S.Ct. 210, 31 L.Ed. 199 (1887), the subsidiaries not only were identified with the interests of GTE, but also their own interest in mutual association, free of any restraint, would be determined either for or against the subsidiaries in the Hawaii litigation. Hence an unfavorable decision would have more than the mere effect of stare decisis upon the subsidiaries as was the case in Bigelow v. Old Dominion C. Min. & S. Co., 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009 (1912).

The common interest in association sets this case apart from the ordinary res judicata case. A rough parallel is found in the cases of Aluminum Co. of Amer. v. Admiral Merchants M. Frgt., Inc., 486 F.2d 717 (7th Cir. 1973), and Proctor and Gamble Co. v. Byers Transportation Co., Inc., 355 F.Supp. 547 (W. D.Mo.1973). In those cases shippers were suing to collect refunds of excess freight charges from motor carriers. Defendants were members of an organization that handled their interests concerning tariff rates before the Interstate Commerce Commission (ICC) and before the courts. The carriers had obtained an increase in tariff rates but the ICC subsequently ordered a refund of the excessive charges. Some of the carriers challenged the refund order before a three-judge court in Colorado, which upheld the ICC action. In the two actions named above, shippers sought to recover the excess charges and the courts held that the Colorado decision was res judicata even as to the nonparty carriers.

The nonparty carriers were held to be in privity with the parties in the Colorado action inasmuch as they belonged to the same organization that handled their interests before the ICC and in the Colorado action, and because the same attorneys appeared in the two cases involving the nonparties as appeared in the Colorado action. The nonparty carriers, therefore, had their rights sufficiently represented. Moreover, it was noted that to give each carrier a right to challenge the ICC's order would cause an excessive waste of judicial time and could lead to inconsistent decisions.

In the instant case, the interest of the subsidiaries in defending themselves, or permitting GTE to defend them, in the Hawaii action is much greater than that of the mutual interest of the motor carriers in opposing the ICC's refund order. The motor carriers banded together for convenience. The association was voluntary. Here the identity of interest, via association, is compulsory due to

GTE's ownership of the subsidiaries' stock. Moreover, the GTE subsidiaries had more than a mere financial stake in the outcome of the Hawaii action. They were fighting for their right to life in their association. If identity of interest were the sole criteria in determining privity, the Court would have no hesitancy in finding the subsidiaries to be sufficiently represented by GTE to be in privity with it in the Hawaii action.[5]

However, privity between GTE and its subsidiaries is established not only because of the identity of interest in the Hawaii action but also because there are the additional elements of control and participation present in this case. Here GTE owned all of the voting stock of the subsidiaries. Moreover, GTE used GTE Service to impose coordinated and uniform policies on its subsidiaries. In this type of situation, the courts have often found that the parent-subsidiary relationship establishes privity.[6]

It makes no difference in this case that in the Hawaii action only GTE was a party and that GTE controlled the subsidiaries rather than the subsidiaries controlling GTE. Privity may be established by showing that a person was represented in a prior action by a dominant personality, as well as by showing that the person actually controlled the prior action. As stated in Jefferson School of Social Science v. Subversive Act. Con. Bd., 118 U.S.App.D.C. 2, 331 F.2d 76, 83 (1963):

For example, a subsidiary corporation is held to be in privity with its parent in respect to the common corporate business. In the case at bar it has been found as a fact by the Board that the School [a Communist-front organization formed by the Communist Party] is substantially dominated, directed and controlled by the Communist Party and that it operates primarily to achieve objectives of the

---

5. The identity of interest between GTE and its subsidiaries would likely have permitted them to intervene in the Hawaii action. While privity is not established and res judicata is not usually applied upon the mere finding that a nonparty might have intervened in a prior action, Gratiot County State Bank v. Johnson, 249 U.S. 246, 39 S. Ct. 263, 63 L.Ed. 587 (1919), that is a factor which is proper for consideration in some cases. See Penn-Central and N & W Inclusion Cases, 389 U.S. 486, 505–506, 88 S.Ct. 602, 612, 19 L.Ed.2d 723, 739 (1968), which held that persons seeking to challenge the merger in question were bound by the decision of a New York federal court. The Court stated in note 4: "[I]t would be senseless to permit parties seeking to challenge the merger and the inclusion orders to bring numerous suits in many different district courts." In the instant case it would seem the decision in the Hawaii action ought to be fully binding on the subsidiaries for the same reasons.

6. Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 37 S.Ct. 506, 61 L.Ed. 1148 (1917); Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co., 48 F.2d 213 (S.D. N.Y.1930), aff'd per curiam, 48 F.2d 215 (2d Cir. 1931); Goodyear Tire & Rubber Co. v. Overman Cushion Tire Co., 66 F.2d 81 (6th Cir. 1933); Momand v. Universal Film Ex-

changes, 172 F.2d 37, 44–45 (1st Cir. 1948), cert. denied, 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118 (1949). See Van Brode Milling Co. v. Kellogg Co., 113 F.Supp. 845, 847 (D.Del.1953).

The right and ability to control, because of ownership rights, have gained increasing recognition as factors which establish privity. See Pan American Match, Inc. v. Sears, Roebuck and Co., 454 F.2d 871 (1st Cir. 1972), cert. denied, 409 U.S. 892, 93 S.Ct. 113, 34 L.Ed.2d 149 (1972)—parent bound by subsidiary; Sparks Nugget, Inc. v. C.I.R., 458 F.2d 631 (9th Cir. 1972), cert. denied, Graves v. United States, 410 U.S. 928, 93 S. Ct. 1362, 35 L.Ed.2d 589 (1973)—owners bound by adjudication against their corporation; P I Enterprises, Inc. v. Cataldo, 457 F.2d 1012, 1014 n. 3 & 5 (1st Cir. 1972)—owners in privity with corporation; Astron Industrial Associates, Inc. v. Chrysler Motors Corp., 405 F.2d 958, 961 (5th Cir. 1968)—parent bound by wholly owned subsidiary; United States v. Webber, 396 F.2d 381, 388 (3rd Cir. 1968)—owners bound by prior action against corporation; Walter E. Heller & Company v. Cox, 343 F.Supp. 519 (S.D.N.Y.1972), aff'd mem., 486 F.2d 1398 (2d Cir. 1973), cert. denied, 414 U.S. 827, 94 S.Ct. 46, 38 L.Ed.2d 61 (1973)—shareholders and partners bound; and 1B, Moore's Federal Practice, ¶ 0.411 [10], at 1659.

Party. Those findings establish an identity of interest between the School and the Party in respect to the nature of the Party as an auxiliary of the Communist movement. Privity having thus been established, the finding of the Supreme Court in respect to the Party estopped the School from re-litigating the identical issue determined in the prior case.

This is not to say that every action against a parent corporation will bind a subsidiary. However, here the evidence establishes that GTE controlled and dominated its subsidiaries through GTE Service and in particular did this in regard to the antitrust violations alleged both here and in the Hawaii action in regard to the selling and purchasing of equipment. Moreover, the subsidiaries had an actual interest in the Hawaii action both in preserving their right to association with GTE and in protecting their rights in regard to any res judicata effect of a judgment there.[7] The fact that GTE dominates or controls its subsidiaries does not itself mandate a finding of privity. The parties agree that the subsidiaries are not alter egos of GTE. Rather the finding of privity arises from the fact of domination and the additional fact that the subsidiaries permitted GTE to represent their substantial interests in the outcome of the Hawaii action. Because the rights of the subsidiaries were so intimately affected by the Hawaii action, it would have been incumbent on them to intervene if they wished to protect those rights. (See footnote 5). By remaining silent, they acceded in having their rights represented by GTE and are bound by that decision. In addition, the willingness of the subsidiaries to be represented by GTE is shown by the facts that the trial attorneys are the same

7. Assuming that the subsidiaries were in privity with GTE in the Hawaii action, then the determination of the issues relating to liability in the injunction aspects of the Hawaii action would have collateral estoppel effects on the issues common to the damage claim to be litigated here. Florists' Nationwide Tel. Del. Net. v. Florists' Tel. Del. Ass'n, 371 F.2d 263, 271 (7th Cir. 1967), cert. denied, 387 U.S. 909, 87 S.Ct. 1686, 18 L.Ed.2d 627 (1967); Boise Cascade Int., Inc. v. Northern Minn. Pulpwood Pr. Ass'n, 294 F. Supp. 1015, 1017 (D.Minn.1968). Thus were it not for this Court's prior decision that ITT has split its cause of action by bringing this subsequent damage suit, GTE and its privies would be collaterally estopped from litigating anew the issues concerning their violation of the antitrust laws which were decided in the Hawaii action. This rule would in turn operate to deprive GTE and its privies from having a jury pass on those issues. See Crane Co. v. American Standard, Inc., 490 F.2d 332, 341–345 (2d Cir. 1973), for an excellent discussion by Chief Judge Friendly of the res judicata effects of a prior equitable action on the right to a jury trial in a subsequent action. Thus by failing to bring its damage claims against GTE and its privies in the Hawaii action, ITT would have deprived GTE and these subsidiaries here of important rights, were it not for this Court's holding that ITT has split its cause of action.

Even if the subsidiaries were not in privity with GTE in the Hawaii action, the judgment there could still have res judicata effects on this action. For example, if ITT had lost the Hawaii action because it failed to establish a violation of the antitrust laws, the subsidiaries may have been able to use collateral estoppel defensively, and thereby have prevented ITT from litigating the issue of liability in this subsequent damage suit. The requirement of mutuality appears to be waning so as to permit nonparties to make defensive use of a judgment against a party in a prior action. See Blonder-Tongue Labs. v. University Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). The fact that here the prior judgment was a decree in equity and this action is one at law should make no difference in the application of res judicata. Crane Co. v. American Standard, Inc., supra, n. 15, 490 F.2d at 343.

The Court does not mean to imply that every joint tortfeasor relationship establishes privity merely because a prior action against one tortfeasor may produce res judicata results as to a subsequent action involving another tortfeasor. As the body of this opinion indicates, three factors combine to establish privity: (1) identity of interest; (2) control or domination; and (3) participation in the prior action. Here the potential res judicata results of the judgment in the Hawaii action illustrate the identity of interest between GTE and its subsidiaries. The greater the identity of interest in a prior action, the more likely is it that a party actively or passively participated in the prior action, and either controlled it or allowed itself to be controlled.

here as in the Hawaii action and that a person, who was Vice-President and General Counsel for both GTE and GTE Service, took an active part in preparing and litigating the Hawaii action. This last fact has particular importance since one of GTE Service's functions was to provide legal advice and counsel for the subsidiaries. It makes no difference that the subsidiaries elected to have their rights represented rather than individually providing their own representation. The fact remains that their interests were represented.

Whether the acquiescence of the subsidiaries in having GTE represent their interests in the Hawaii action would, standing alone, prove privity with respect to this action, the Court does not decide. Here, there is more than identity of interest and control. The subsidiaries also actively participated in the Hawaii action to a degree sufficient to conclude that they were in privity with GTE and had their fair day in court.

Since they permitted GTE to represent them, the participation was necessarily limited to producing evidence at GTE's behest. The files of the subsidiaries were freely used by GTE. The officers of the subsidiaries appeared and took part in the Hawaii litigation on behalf of GTE. The parties agree that GTE controlled the action on behalf of the subsidiaries to the extent they could be affected by the decree there; the impact of which, as has been previously mentioned, was enormous. The fact that the subsidiaries freely permitted their documents to be used, and the fact that they actively participated in the case as witnesses provides a positive indication that they actually participated in the Hawaii action and intended to have their rights represented by GTE. This finding is buttressed because the documents and testimony involved the very transaction with which this suit is concerned.

In the context of the present case, the participation of the subsidiaries, in producing evidence as described above, demonstrates that degree of activity necessary to make them substantial participants in the Hawaii action, as opposed to being merely interested spectators. See Cauefield v. Fidelity & Casualty Company of New York, 378 F.2d 876 (5th Cir. 1967), cert. denied, 389 U.S. 1009, 88 S.Ct. 571, 19 L.Ed.2d 606 (1967), where the plaintiffs were estopped from litigating a matter because of an adverse jury decision in a prior suit where the plaintiffs were not parties, but who appeared and testified to matters which were essential to their recovery in their own suit. See also Council Brothers, Inc. v. Ray Burner Company, 473 F.2d 400, 404–405, n. 5 (5th Cir. 1973); cf. Fabricius v. Freeman, 466 F.2d 689, 693, n. 5 (7th Cir. 1972).

The Court concludes that the activities of the subsidiaries bring them within the rule as stated in Souffront v. La Compagnie Des Sucreries De Porto Rico, 217 U.S. 475, 486, 30 S.Ct. 608, 612, 54 L.Ed. 846, 851 (1910): "The persons for whose benefit, to the knowledge of the court and of all the parties to the record, litigation is being conducted, cannot, in a legal sense, be said to be strangers to the cause." Here the participation of the subsidiaries in the Hawaii action was open and known to all. Therefore, the principles of res judicata may be applied against them, and they, on the other hand, may now make use of those principles for their benefit.

One final word can be said on the public policy aspects of this decision which holds that ITT may not bring this damage action against the subsidiaries because they were in privity with GTE in the Hawaii action. The Court has previously stated its view that the public policy is not advanced by burdening a party with successive suits for injunctive relief and then damages. (369 F.2d at 326–328). Such a situation could deprive a defendant of important rights in the subsequent damage suit. (See footnote 7). An additional factor comes to mind. Had ITT brought its damage action against GTE in the Hawaii action and recovered, it could have secured the full amount of its claim, and there would be no necessity for bringing this action. One reason for this is that at all times

GTE had the financial resources to have satisfied the judgment. Second, since GTE owns all of the voting shares of the subsidiaries, part of GTE's assets which would be liable for the judgment would include a substantial portion of the assets of the subsidiaries.[8] In such a case, a judgment against the subsidiaries tends to become superfluous. This fact only strengthens this Court's decision that ITT should not be able to bring a multiplicity of litigation when it could have had all that it wanted in the Hawaii action.

IT IS, THEREFORE, ORDERED that the motion for summary judgment of defendants, GTE Service, AE, and Southeast, should be, and the same hereby is, granted, and that this action is barred because plaintiff ITT has split its cause of action. Judgment will be entered accordingly.

---

8. For example, GTE owns all of the common stock of Southeast which is worth $171,500,000. Other persons own the nonvoting, nonconvertible preferred stock worth $3,780,000. Southeast has outstanding long and short term debts in an aggregate amount of $206,400,000. GTE has thus supplied forty-five percent of Southeast's capital/debt ratio.