## INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION, Plaintiff,

v.

## GENERAL TELEPHONE & ELECTRONICS CORPORATION et al., Defendants.

### No. C-128-G-71.

United States District Court,
M. D. North Carolina,
Greensboro Division.

Dec. 27, 1973.

---

David M. Clark, Clark & Tanner, Greensboro, N. C., Maxwell M. Blecher, Blecher, Collins & Hoecker, Los Angeles, Cal., Edwin A. Kilburn, Robert E. McKee, New York City, for plaintiff.

James L. Newsom, Newsom, Graham, Strayhorn, Hedrick & Murray, Durham, N. C., Stanley D. Robinson, Kaye, Scholer, Fierman, Hays & Handler, George E. Shertzer, New York City, Ward W. Wueste, Jr., Durham, N. C., for defendants.

## MEMORANDUM OPINION

HIRAM H. WARD, District Judge.

This matter comes before the Court on defendants' motion for summary judgment requesting dismissal of the complaint on the grounds that Count I is barred by the doctrine which prohibits the splitting of a cause of action.[1] Defendants attached to their motion an affidavit by one of their counsel in which he states that the transaction complained of in Count I of the complaint was the subject of extensive discovery in the case of International T. & T. Corp. v. General Tel. & Elect. Corp., 351 F. Supp. 1153 (D.Haw.1972), (hereinafter referred to as the Hawaii action), and that the transaction was the subject of testimony and judicial discussion in that case. Plaintiff has not contested this factual basis of defendants' motion, but does challenge the legal basis for their requested relief.

In deciding this motion the Court takes judicial notice of the decision in the Hawaii action and will consider the affidavit and pleadings filed in this case.

Plaintiff International Telephone and Telegraph Company (ITT) is a Delaware corporation with its principal place of business in New York. It has a telecommunications division whereby it engages in the business of manufacturing, distributing, and selling telephone equipment, components, and supplies in domestic and foreign commerce.

Defendant General Telephone & Electronics Corporation (GTE) is a New York corporation with its principal place of business in New York. It owns and controls telephone operating companies and equipment manufacturing and distributing companies.

Defendant GTE Service Corporation (GTE Service) is a New York corporation with its principal place of business in New York. It is a wholly owned subsidiary of GTE and furnishes the corporations in the GTE system with advice and it also controls their operations.

General Telephone Companies of the Southeast and Alabama is alleged to be a telephone operating company with its principal place of business in Durham, North Carolina. Defendants' answer states that there are actually two distinct entities (Southeast and Alabama) and not just one. Southeast operates in North Carolina and other adjoining states.

Defendant GTE Automatic Electric, Inc., (AE), is a manufacturing and supply company for the GTE system. It is a Delaware corporation with its principal place of business in Illinois. It is a major manufacturer of telephone equipment and a subsidiary of GTE (351 F. Supp. at 1161).

Plaintiff ITT initiated this action on June 11, 1971,[2] to recover treble dam-

---

1. Pursuant to Rule 41(a)(1)(ii), Federal Rules of Civil Procedure, the parties stipulated on April 11, 1973, to a dismissal of Count II of the complaint on the grounds that it is barred by the applicable statute of limitations. In Count II, plaintiff had sought damages on the theory of breach of contract.

2. Thus plaintiff commenced this action within a few days of the running of the 4-year statute of limitations contained in Section 4B of the Clayton Act, 15 U.S.C. § 15b. The injury arising from the cancellation of the order allegedly occurred on or about June 12, 1967.

ages under Section 4 of the Clayton Act, 15 U.S.C. § 15, for alleged violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 7 of the Clayton Act, 15 U.S.C. § 18. To no one's surprise, the allegations of this complaint track the findings by Judge Pence in the Hawaii action where ITT prevailed. The complaint alleges a series of acquisitions by GTE of operating and manufacturing companies in order to effect a vertical integration in the telephone industry, thereby making the GTE system the largest independent telephone company system in the nation. (The term independent is used here to mean non-Bell companies. See International T. & T. Corp. v. General Tel. & Elec. Corp., *supra*, at 1169–1171). Plaintiff further alleges that its North American Telecommunications Division competes with AE in manufacturing and selling telephone apparatus, switching systems and transmission equipment to independent telephone companies. The specific damage complained of in this action was the subject of a comment by Judge Pence in the Hawaii action. He states at 351 F.Supp. at 1189:

> Because of the 73-day strike at AE's North Lake Plant (which ended January 24, 1967), AE was unable to meet its delivery commitments. In May 1967 General Telephone of the Southeast had ordered 27,000 lines of step-by-step additions from ITT, but suddenly AE "improved" its delivery commitments sufficiently to induce Southeast to cancel the order.

As a result of those actions, plaintiff alleges that it was damaged in the amount of at least $2,000,000.

In defendants' motion for summary judgment, they seek to dismiss this law suit on the grounds that plaintiff has split its cause of action. Defendants claim that plaintiff should have sued for its damages in the Hawaii action.

The Hawaii action was initiated in October 1967 by plaintiff against GTE and others. ITT charged violations of Sections 1 and 2 of the Sherman Act and Section 7 of the Clayton Act, 15 U.S.C. §§ 1, 2, 18, and requested equitable relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26. (ITT also charged defendants with violation of Hawaiian law.) Judge Pence twice pointed out the fact that ITT only requested equitable relief and made no claim for money damages.[3] He found violations of the antitrust laws and granted injunctive relief, including divestiture by GTE.

In its brief, ITT admits that it could have asserted the damage claim, which is the subject of this suit, in the Hawaii action. It contends that it was nevertheless under no obligation to so proceed, but instead that it was perfectly proper for it to first bring an action under Section 16 of the Clayton Act, and then, subsequently, sue for damages under Section 4 of the Clayton Act. ITT further claims that it could not have obtained jurisdiction over Southeast and Alabama in the Hawaii action and thus it was necessary to delay its claim for damages. Only GTE was a party in the Hawaii action. However, other than Southeast and Alabama, ITT has made no claim that it was in any way precluded from proceeding with its damage action against the other defendants, in the Hawaii action, nor has it contended that

---

3. "ITT requested only equitable relief, including a request that GTE be ordered to divest itself of its interests in Peninsular Telephone Company (Peninsular), the Western Utilities Group, Central Iowa, Hawaiian and Northern Ohio, as well as its manufacturing subsidiaries AE, Lenkurt and Sylvania, to the end that the independent telephone operating companies market for telecommunications equipment (i. e., excluding the American Telephone and Telegraph System

(Bell)) would be opened to competition among all the independent telecommunications equipment manufacturing companies.

As indicated, in essence ITT purported to act in the status of a 'private attorney general' in this action against GTE. ITT asked for no money damages under its federal claims. It did ask for costs and attorneys' fees for its claims under the Hawaiian Act." (351 F.Supp. at 1161–1162).

a judgment for damages against any defendant would have been worthless.

The issue before the Court is whether the doctrine of res judicata bars the instant claim for damages. To set the issue more précisely, does plaintiff's failure to combine its Section 4 damage claim with its Section 16 action for equitable relief in the Hawaii action, now preclude the damage claim from being litigated in this court? Second, if the damage claim is now precluded, does that ruling apply not only to GTE which was a party in the Hawaii action, but also to the other defendants, which were not parties in that action?

█ In deciding the first issue, it may be helpful to generally define what is meant by splitting a cause of action. The rule against splitting a cause of action is part of the doctrine of res judicata.[4] That doctrine is of judicial origin. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S. Ct. 715, 719, 92 L.Ed. 898, 905–906 (1948). There the Supreme Court spoke of the purpose of the doctrine as follows:

The general rule of res judicata applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations. The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195, 197. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment. See von Moschzisker, "Res Judicata," 38 Yale L.J. 299; [Am.L.Inst.] Restatement of Law of Judgments, §§ 47, 48.

As further stated in 1B, Moore's Federal Practice, ¶ 0.410[2], at 1164 (2d ed. 1965): ". . . in accordance with public policy, partially to conserve the courts' time but probably in the main to prevent the hardship upon defendant of unnecessary piecemeal litigation, a single cause of action cannot be split so as

4. In Towle v. Boeing Airplane Company, *infra*, 364 F.2d 590, 592 (8th Cir. 1966), Judge Van Oosterhout succinctly summarized the law as follows:

The term res judicata is frequently used to cover merger, bar, collateral estoppel and direct estoppel. See Lawlor v. National Screen Service, 349 U.S. 322, 326, n. 6, 75 S.Ct. 865, 99 L.Ed. 1122. Here, as in Engelhardt v. Bell & Howell Co., 8 Cir., 327 F.2d 30, we adopt Professor Vestal's more precise and helpful descriptive words of claim preclusion and issue preclusion, which he defines thusly:

"The concept of res judicata, which is not at all a simple one, encompasses at least two distinct facets. For the sake of clarity it is desirable to distinguish the foreclosing of further litigation on a cause of action (which may be called claim preclusion) from the preclusion of further litigation of an issue (which may properly be called issue preclusion)." Vestal, Preclusion/Res Judicata Variables, April 1965 issue Washington University Law Quarterly, p. 158.

. . . . .

The law of res judicata/claim preclusion is well established. Whenever a court having jurisdiction has rendered a final judgment upon the merits of a cause of action, that judgment is binding upon the parties and their privies not only as to every matter that was litigated but also to every matter which could have been litigated. In event of subsequent litigation upon the same cause of action, the parties and their privies are precluded from receiving relief. (Citations omitted).

. . . . .

It is well settled that a litigant cannot split his claim and have two trials upon the same alleged breach of duty. Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 320, 47 S.Ct. 600, 71 L.Ed. 1069; Engelhardt v. Bell & Howell Co., supra; Norman Tobacco & Candy Co. v. Gillette Safety Razor Co., 5 Cir., 295 F.2d 362, 363.

to be properly made the subject of different actions . . . ."

While not minimizing the importance of the policy behind the doctrine of res judicata, some courts and commentators point out that the doctrine should not be rigidly applied in all cases but that it should be used with some flexibility in order to accommodate the essential justice which a given situation may demand. United States v. Pan-American Petroleum Co., 55 F.2d 753, 776 (9th Cir. 1932); 1B, Moore's Federal Practice, ¶ 0.405[12] (2d ed. 1965).

The crucial decision, which must be made in applying the rule against splitting a cause of action, is that of deciding what constitutes a cause of action. As stated in 1B, Moore's Federal Practice, ¶ 0.410[1], at 1157-8 (2d ed. 1965):

> Various tests have been suggested for determination of what constitutes a cause of action for purposes of res judicata. Some are: whether the same right is infringed by the same wrong; whether "there is such a measure of identity that a different judgment in the second [action] would destroy or impair rights or interests established by the first" judgment, identity of grounds; whether the same evidence would suffice to sustain both judgments.

In Towle v. Boeing Airplane Company, 364 F.2d 590, 592 (8th Cir. 1966), the Eighth Circuit reiterated its practical approach to the problem stating:

> In *Engelhardt*, supra, we cited and discussed numerous cases dealing with the problem of what constitutes a cause of action and the tests for comparing causes of action. We there stated: "The primary test for comparing causes of action has long been whether or not the primary right and duty, and the delict or wrong combined are the same in each action." 327 F.2d 30, 32. We also held that the same evidence test may well be

valid as a positive test but that it is not conclusive as a negative test.

That approach to the problem recognizes that under a given fact situation no one test may supply a completely adequate basis on which to analyze the issue, but by use of several of the tests the court can make a decision with greater assurance that its decision not only states the law but also that its decison affords the parties substantial justice.

It may be that the concept of what constitutes a cause of action is nebulous. Nevertheless, it is in the determination of that issue that the court must resolve the often conflicting demands of enforcing the public policy behind the doctrine of res judicata and of giving the parties a chance to have a fair day in court in order to peacefully resolve all their disputes.

Although the case books are replete with decisions involving the doctrine of res judicata, the particular controversy in this case presents a novel question. The parties agree that it is a case of first impression. Plaintiff contends that the treble-damage provisions of Section 4 of the Clayton Act provides a cause of action which is separate and distinct from the equitable relief provisions of Section 16 of the Clayton Act. Thus ITT claims that even though it could have brought its damage claim in the Hawaii action, it was under no obligation to do so. The Court concludes otherwise.

Under the facts of this case, Sections 4 and 16 of the Clayton Act do not provide plaintiff with separate and distinct causes of action. They form but one cause of action in giving plaintiff the right to enforce the antitrust laws. The essential difference between the two sections is the kind of remedy which they afford the private suitor. In the Hawaii action, Judge Pence likened the two relief provisions contained in Sections 4 and 16 of the Clayton Act to a double barrel shotgun.[5] Thus a complainant

---

5. Judge Pence stated at page 923 of 296 F. Supp.:

While the right to such injunctive relief to redress antitrust grievances may be said to

may pull both triggers together, or he may pull either one or the other. However, he may not pull one trigger, wait until he sees if he has hit the target, and then, even if successful, make the same target stand in the same position for another round of target practice.

Plaintiff nevertheless contends that "a right to enjoin threatened injury and a right to redress past injury from violations of the federal antitrust laws are separate and independent causes of action designed to protect entirely different legal rights." (Page 32, plaintiff's brief of March 9, 1973). That distinction between Sections 4 and 16 of the Clayton Act is not quite accurate. Indeed Section 4 of the Clayton Act itself may provide two causes of action for the same violation. In Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321, 338–339, 91 S.Ct. 795, 806, 28 L.Ed.2d 77, 92 (1971), (Zenith II), the Supreme Court spoke of this in explaining how a damage claim under Section 4 arises:

> Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business. . . . In the context of a continuing conspiracy to violate the antitrust laws, such as the conspiracy in the instant case, this has usually been understood to mean that each time a plaintiff is injured by an act of the defendants a cause of action accrues to him to recover the damages caused by that act and that, as to those damages, the statute of limitations runs from the commission of the act. . . . However, each separate cause of action that so accrues entitles a plaintiff to recover not only those damages which he has suffered at the date of accrual, but also those which he will suffer in the

future from the particular invasion, including what he has suffered during and will predictably suffer after trial.

. . .

> In antitrust and treble-damage actions, refusal to award future profits as too speculative is equivalent to holding that no cause of action has yet accrued for any but those damages already suffered. In these instances, the cause of action for future damages, if they ever occur, will accrue only on the date they are suffered; thereafter the plaintiff may sue to recover them at any time within four years from the date they were inflicted.

Thus the protection afforded a plaintiff by Section 4 looks to the future as well as the past. The equitable relief offered by Section 16 of the Clayton Act also looks to the future, but as stated in Zenith Radio Corp. v. Hazeltine Research, 395 U.S. 100, 130, 89 S.Ct. 1562, 1580, 23 L.Ed.2d 129, 152 (1969), (Zenith I):

> That remedy is characteristically available even though the plaintiff has not yet suffered actual injury, . . . he need only demonstrate a significant threat of injury from an impending violation of the antitrust laws or *from a contemporary violation likely to continue or recur.* (Emphasis added).

Hence, injunctive relief can be predicated upon a present violation, and the fact that it also involves actual past injury only serves to strengthen plaintiff's case. The remedies contained in Sections 4 and 16 cannot be neatly divided into past and future categories. This is demonstrated by the fact that a private litigant may bring an action based on a violation and secure a present award of damages, and equitable relief. More-

---

be "additional" to the right to damages in the sense that it may be conjoined therewith, it may also be an alternative. As the above history manifests, the equitable remedy of § 16 is in no way "predicated upon", incidental to or derived from the legal right of § 4. The two sections expressly create wholly independent remedies, in strikingly similar language. A litigant may pull *either*

trigger of his shotgun independently, or, at his option, he may shoot both barrels together. This is abundantly clear from the instant complaint, in which plaintiff seeks only injunctive relief. No damage claim exists herein on which any equitable remedy could be predicated. Yet defendants have not challenged plaintiff's right to maintain this suit. (Emphasis added).

over, this same violation may provide the basis for an additional cause of action for damages in the future.

Further, plaintiff's view of the differences between Sections 4 and 16 of the Clayton Act does not provide a very good basis with which to analyze res judicata problems. In applying that doctrine, case law fails to support such an artificial distinction between suits at law and equity. The specific question of whether a prior suit for equitable relief bars a subsequent action for damages has been the subject of much litigation.[6] While the results have not been entirely uniform, a common thread seems to run through those cases. If the cause of action is the same in both actions, the doctrine of res judicata will be applied. The recent case of Clarke v. Redeker, 406 F.2d 883 (8th Cir. 1969), serves as a good example. Plaintiff had sought to enjoin the enforcement of regulations by the University of Iowa permitting the charging of higher tuition rates for nonresidents. That action was dismissed on the grounds that the case presented no substantial federal question. In a subsequent action, the plaintiff attempted to recover a refund of his excess tuition payments as well as damages. The court responded:

> The cause of action here asserted is the same cause of action asserted in the earlier case. In both actions, Clarke seeks relief for the same wrong, to wit, denial to him of the resident tuition rate, and the same period of time is involved. Plaintiff cannot split a cause of action. Towle v. Boeing Airplane Co., 8 Cir., 364 F. 2d 590, 592. (406 F.2d at 885).

It would be unrealistic to adopt plaintiff's position that the differences between equity and law in the types of relief available under Sections 4 and 16 of the Clayton Act should govern in applying the doctrine of res judicata. The Federal Rules of Civil Procedure abolish the distinction between suits at law or equity. Rule 2 provides: "There shall be one form of action to be known as 'civil action'." Other provisions in the Rules make clear that doctrinaire analysis is to be avoided in determining whether the remaining differences existing between rights under law and equity have importance in applying the doctrine of res judicata. The following excerpts from 2, Moore's Federal Practice (1970), serve to elucidate this approach:

> Nowhere in the Rules is the term "cause of action" used. This can only mean that the draftsmen, by the use of the phrases "claim" or "claim for relief", hoped that such different expressions in lieu of "cause of action" would give the courts freedom to escape from the morass of decisions concerning a cause of action; and would adopt a pragmatic treatment of what we may for convenience still refer to as a cause of action. "For the traditional and hydra-headed phrase 'cause of action'", Judge Swan has said, "the Federal Rules of Civil Procedure have substituted the word 'claim.' It is used to denote the aggregate of operative facts which give rise to a right enforceable in the courts."
>
> . . . The common law as developed did not adapt itself to any existing factual arrangement but sought artificially to straight-jacket certain fragments into causes of action, and further complicated this by the problem of joinder of causes. A shift was inevitable. With the advent of the codes an effort was made to adapt procedure to the exigencies of life. Law and equity were to be merged; and there was to be but one form of action in which *all* relief must be secured.

(¶ 2.06[2] at 359–60).

This empirical approach toward a cause of action as embracing an entire group of operative facts, fairly well exemplified in the jurisdictional cases, should be utilized by the federal

---

6. See Anno.: "Injunction—Bar—Action for Damages," 26 A.L.R.2d 446 (1952), and Anno.: "Specific Performance as Bar to Damages," 38 A.L.R.3d 323 (1971).

courts in the treatment of res judicata insofar as they are free to fashion that doctrine. Here the problem is essentially one of fairness, and one of administrative policy designed to end litigation: have the parties litigated or had a reasonable opportunity to litigate the same or similar type of issues now raised.

(¶ 2.06[6] at 378).

For basic purposes the federal courts, when free to do so, have acted realistically in the treatment of a cause of action. A clear realization that this resulted from expediency rather than from any *a priori* reasoning will prevent the concept "cause of action" as defined herein from thwarting the ends of justice. It has the flexibility to afford an empirical solution to procedural problems. Substantive rights remain unaltered. Procedurally, however, forms of actions are immaterial. Law and equity are united. All grounds for relief must be urged in one action.

(¶ 2.06[9] at 395).

■ The right to a jury trial on damage claims is another of the legal-equitable differences between Sections 4 and 16 which plaintiff uses to support its view that the two sections should be construed as creating separate causes of action. Plaintiff asserts that had the Hawaii action included a jury trial on its Section 4 damage claims, the trial would have become very complex so that likely the trial court would have separated the issues for trial. It is not disputed that plaintiff and defendants have a right to have the claims arising under Section 4 of the Clayton Act decided by a jury. Beacon Theatres v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). However, that argument serves to support the dismissal of damage claims brought in a subsequent suit as plaintiff has done in the present case. The Federal Rules of Civil Procedure provide sufficient flexibility for a court to handle both a damage claim and an injunctive relief claim under the antitrust laws. Beacon Theatres v. Westover, *supra*. In fact, there is merit in having a single court hear both issues. Since only a single judge need prepare for both actions, judicial time is saved, and, to the extent possible, a joint trial on both issues will save time for the parties also. Moreover, the likelihood of inconsistent results is also minimized. See Beacon Theatres v. Westover, *supra*, n. 10, 359 U.S. at 508, 79 S.Ct. at 955, 3 L. Ed.2d at 996. These factors are the very ones upon which the doctrine of res judicata derives its validity as a judicial tool used to prevent the evils caused by a multiplicity of suits.

■ Turning to the facts of this particular case, the Court finds that the claim for damages here could have and should have been raised and litigated in the Hawaii action. In making this statement, the posture of this case has an importance. Here plaintiff first sought and obtained injunctive relief. It sufficiently demonstrated that it suffered from a past and a threatened future injury. The facts used to prove the violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, are the very ones it now relies upon in its complaint in alleging its claim here for damages. In fact the very transaction upon which the damage claim is predicated was made part of Judge Pence's decision in the Hawaii action. Thus in evaluating whether plaintiff's action here is the same as the one in the Hawaii action, the fact that the evidentiary basis of the two suits is similar indicates a substantial likelihood that they both constitute one cause of action. Towle v. Boeing Airplane Company, *supra*. The fact that the damage claim involves an actual determination as to the amount of damages is not a significant difference.

Other factors also demonstrate the cause of action here is the same as that in the Hawaii action. The duty owed to plaintiff by defendants, in the Hawaii action and in the damage suit here, are both the same, i. e., the duty not to violate Section 1 of the Sherman Act and Section 7 of the Clayton Act. 15 U.S.C

§§ 1, 18. The wrong committed by violation of those statutes is essentially the same, i. e., economic injury. The specific wrong allegedly committed in this action is the cancellation of a buying order. In the Hawaii action, the injunctive relief which plaintiff obtained would hopefully prohibit a reoccurrence of similar wrongs in the future. Actually, the Hawaii action encompassed both past injury and threatened future injury. The fact that plaintiff was able to show actual past injury in the Hawaii action only made its case there that much stronger. (351 F.Supp. at 1198). While absolutely not essential to its case, the cumulation of past wrongs made the prospect of future violations and injury only that much more probable. In this case, the alleged injury actually occurred before the institution of the action in Hawaii, so plaintiff cannot be heard to claim that the cause of action here had not yet arisen when it filed its complaint in Hawaii. In conclusion, the primary right and duty and the delict or wrong combined are the same in both actions. Towle v. Boeing Airplane Company, *supra*. This and the same evidence test support the decision that plaintiff's present claim for damages is part of its cause of action tried in the Hawaii action.

In order to elucidate this decision, it may be helpful to hypothesize a situation where plaintiff had first sought damages in the Hawaii action, and now comes before this Court seeking an injunction. In that case, plaintiff would have first sued for all past violations and injury. It would have received all damages for injuries, including future injuries proven with the requisite sufficiency. Its action in front of this Court would then allege "a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." *Zenith I, supra* (cited and quoted on Page 322 of this opinion). Thus the violations which would be the subject of the action in the second hypothetical suit would all be new violations differ-

ent from those in the first hypothetical action, or else they would be a continuation of the old violations. If the violations be new ones, then it could not be said that they should have been the subject of the original action. They would not have then existed. Thus the second action would involve additional facts of another violation of a duty under the antitrust laws, plus a new wrong—the threat of a new injury. The hypothetical plaintiff could then not only bring his action for injunctive relief, but he would have a new action for damages if actually injured. On the other hand, if the basis of the hypothetical second suit was the continuation of the previous violations, the plaintiff still would not be barred from seeking injunctive relief under Section 16 of the Clayton Act. In addition to the fact that the continuation of the violations would constitute additional evidence different from the prior damage suit, there is a public policy reason which would override the public policy behind the doctrine of res judicata. In a somewhat similar situation, the Supreme Court in Lawlor v. National Screen Service Corp., 349 U.S. 322, 329, 75 S.Ct. 865, 869, 99 L.Ed. 1122, 1128 (1955), stated that policy to be as follows:

. . . There is no merit, therefore, in the respondents' contention that petitioners are precluded by their failure in the 1942 suit to press their demand for injunctive relief. Particularly is this so in view of the public interest in vigilant enforcement of the antitrust laws through the instrumentality of the private treble-damage action. *Acceptance of the respondents' novel contention would in effect confer on them a partial immunity from civil liability for future violations. Such a result is consistent with neither the antitrust laws nor the doctrine of res judicata.* (Emphasis added).

Under the present factual situation, the Court does not find that its decision precluding plaintiff from splitting its cause of action conflicts with the public interest in enforcing antitrust

law. The decision today does not sanction future violations, nor does it prevent the plaintiff from seeking future damages for those past violations where the injury was not yet suffered, and thus did not accrue until after the trial of the case in the Hawaii action. The Court views the decision as being consistent with the principles of res judicata, and as will appear next, as not being antithetical with the policy and purpose of the antitrust laws.

Plaintiff's strongest argument for permitting it to now bring its claim for damages, after securing relief in the Hawaii action, rests on the public policy inherent in Sections 4 and 16 of the Clayton Act. ITT claims that in the first action it acted as a private attorney general not only for itself but also for others, because the injunctive relief requiring divestiture by GTE operates to open up the markets heretofore closed by defendants' illegal restraints. Thus all companies which sell telephone equipment in competition with AE benefit by the increased opportunity to sell their goods. Plaintiff contends that when the United States brings an action to restrain violation of the antitrust laws under Section 15 of the Clayton Act, 15 U. S.C. § 25, it need not bring its action for damages under Section 4A of the Clayton Act, 15 U.S.C. § 15a at the same time, but can wait and file a subsequent action. ITT asserts that effective enforcement of the antitrust laws requires that private attorneys general be accorded no less consideration. While these arguments are not unappealing, the Court holds that in this case, the public policy reasons behind the doctrine of res judicata override the private attorney general concept contained in the antitrust laws.

The private litigant has not fared as well as the government in convincing courts that it should be able to bring a subsequent action enforcing the antitrust laws. In the following cases, the courts have held a subsequent private antitrust action barred because of a prior action between the parties. Williamson v. Columbia Gas & Electric Corp., 186 F.2d 464 (3rd Cir. 1950), cert. denied, 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1355 (1951)—(Section 7 of the Clayton Act action barred due to prior action under Section 1 of the Sherman Act); F. L. Mendez & Co. v. General Motors Corporation, 161 F.2d 695 (7th Cir. 1947), cert. denied, 332 U.S. 810, 68 S. Ct. 111, 92 L.Ed. 387 (1947)—(Section 3 of the Clayton Act action barred by prior action under Section 1 of the Sherman Act); Engelhardt v. Bell & Howell Co., 327 F.2d 30 (8th Cir. 1964)—(Section 1 of the Sherman Act action barred due to prior federal action brought under state antitrust laws); Norman Tobacco & Candy Co. v. Gillette Safety Razor Co., 295 F.2d 362 (5th Cir. 1961)—(Section 1 of the Sherman Act action barred because of prior suit for breach of contract). In Williamson v. Columbia Gas & Electric Corp., *supra*, the court noted the essential difference between the private litigant's enforcement of the antitrust laws and those actions brought by the government. It said at page 468 of 186 F.2d:

> Plaintiff relies on the case of United Shoe Machinery Corp. v. United States, 1922, 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708, as setting forth a different rule. That case held that judgment for defendant in a suit by the government seeking dissolution of the corporation because of restrictive lease practices in violation of the Sherman Act did not bar a suit by the government against the same defendant seeking to enjoin the same restrictive lease provisions, because they violated the Clayton Act. We do not think that case applies to our present situation. *There both suits were brought by the government to protect public rather than private interests. The gist of such actions is the doing of various things forbidden by the anti-trust acts, not as here, the injury resulting from the doing of the acts.* (Emphasis added).

Thus the doctrine of res judicata seems to have a caveat to it that states that

the doctrine ought not be used to thwart the government in its attempts to vindicate public policy through enforcement of the laws. United States v. Pan-American Petroleum Co., *supra*, 55 F.2d at 776, 782.

Even if the caveat is recognized, under the Clayton Act the private litigant does not stand in the government's place. The important distinction to be made, however, is not between actions by the United States and those by private litigants. Rather, it is to be made between actions brought by the government under Section 15 of the Clayton Act, 15 U.S.C. § 25, to restrain antitrust violations, and those actions brought either by private parties for damages or equitable relief under Sections 4 and 16 of the Clayton Act, or by the government for damages under Section 4A of the Clayton Act, 15 U.S.C. § 15a. A private party cannot bring an injunctive or damage action on behalf of the public,[7] but can only seek relief for injuries suffered personally. Burkhead v. Phillips Petroleum Company, 308 F. Supp. 120, 123 (N.D.Cal.1970). The fact that a private litigant may secure a comprehensive injunction restraining antitrust violations does not alter the basic distinction between Section 15 suits and private actions under Section 16. There exists an essential difference in the quantum of proof necessary to secure relief under the two statutes. Under Section 16 of the Clayton Act:

> A mere showing by the private plaintiff of a violation of the antitrust laws has no actionable significance because, while in a government action there need be established only an antitrust violation, a private litigant " 'must not only show the violation of the antitrust laws, but show also the impact of the violations upon him,' i. e., some injury (or threatened injury where injunctive relief only is sought)

> proximately resulting from the antitrust violation." McKeon Construction Co. v. McClatchy Newspapers, 1970 Trade Cas. ¶¶ 73, 212 (N.D.Cal. 1969), quoting from Simpson v. Union Oil Company, 311 F.2d 764, 767 (9th Cir. 1963), rev'd on other grounds, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964).
>
> (Credit Bureau Reports, Inc. v. Retail Credit Company, 476 F.2d 989, 992 (5th Cir. 1973).)

Thus private litigants cannot redress public wrongs involving violations of the antitrust laws. That duty was left to the government. The private complainant only has a right to seek relief for violations which cause him harm—either from actual or threatened injury.

It is interesting to note the above limitations applicable to a private party suing under the antitrust laws also pertain to a suit by the United States to recover damages under Section 4A of the Clayton Act, 15 U.S.C. § 15a. As said in Hawaii v. Standard Oil Co., 405 U.S. 251, 265, 92 S.Ct. 885, 892, 31 L.Ed.2d 184, 194 (1972): "the United States was authorized to recover, not for general injury to the national economy or to the Government's ability to carry out its functions, but only for those injuries suffered in its capacity as a consumer of goods and services." One court has even accorded the United States less rights than that of a private litigant in enforcing their respective claims for damages. In United States v. Grinnell Corporation, 305 F.Supp. 285 (S.D.N.Y.1969), the court held that the government was not entitled to the tolling provisions applicable to a private party under Section 5(b), 15 U.S.C. § 16(b), in its suit for damages brought subsequent to its action under Section 15 of the Clayton Act.

From this discussion, it appears that Congress did not intend that private liti-

---

**7.** The lone exception, if in fact it may be termed an exception, is that a state can sue on behalf of her citizens as parens patriae under Section 16 of the Clayton Act. It may not, however, sue in that capacity in order to secure damages under Section 4 of the Clayton Act. Hawaii v. Standard Oil Co., *infra*, 405 U.S. 251, 92 S.Ct. 885, 31 L. Ed.2d 184 (1972).

gants, or the United States in Section 4A damage suits, would directly vindicate public wrongs. That function was left solely to the United States when it brings an action under Section 15 of the Clayton Act, or through enforcement of the criminal laws relating to antitrust violations. When the United States sues under Section 15, it does so on behalf of the public. Thus it is not unreasonable for the courts to permit the United States to pursue that course unencumbered by any necessity of also having to sue for its personal damages at the same time. Also, as pointed out previously, the scope of the two suits is different. The private litigant, on the other hand, never sues on behalf of the public. Whether the suit be for damages or for equitable relief, the private litigant must prove not only a violation of the antitrust laws, but also an injury, either actual or threatened, to himself.

Congress has provided the private litigant with an economic motive to act as a private attorney general in enforcing his private claims, and thereby indirectly advancing the public's interest in having the antitrust laws followed. It offers "recovery in three times the amount of their damages," and by granting the right of "injunctive relief and damages for antitrust violations without regard to the amount in controversy." Hawaii v. Standard Oil Co., *supra,* 405 U.S. at 262, 266, 92 S.Ct. at 891, 893, 31 L.Ed.2d at 192, 194. (In seeking damages, the United States needs no special incentive. *Id.,* fn. 15, 405 U.S. at 264, 92 S.Ct. at 892, 31 L.Ed.2d at 194.)

The Court does not fear that its decision will seriously diminish the policy of the antitrust laws in encouraging private enforcement. Congress has provided ample incentive. However, there is a real danger that defendants may suffer injury caused by vexatious litigation should plaintiff be allowed to split its cause of action. The antitrust laws have the purpose of strengthening the free enterprise system by promoting competition. That policy cannot be served by saddling one competitor with a multiplicity of suits. The doctrine of res judicata specifically provides protection against such an untoward result. After all, the defendants, too, constitute part of the competitors upon whose strength the free enterprise system depends. Thus, under the facts of this case, the public policy supporting res judicata outweighs any public interest in having one cause of action under the antitrust laws enforced by private parties in successive actions. It must be remembered that this decision in no way prohibits private enforcement. It only regulates it. (Compare Perma Life Mufflers v. International Parts, 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968), which held that the doctrine of in pari delicto could not be used since it served as an absolute barrier to recovery and thus undermined the public purpose behind private antitrust suits.) It is not unreasonable to require a private litigant to seek in one action all the relief to which he is entitled.

The second issue presented for decision concerns whether defendants GTE Service, AE, Southeast, and Alabama, which were not parties in the Hawaii action, should have the benefit of the Court's res judicata ruling, as will GTE. While the pleadings indicate that GTE Service is a wholly owned subsidiary of GTE, they do not define the other defendants' relationship with GTE. From the decision in the Hawaii action and briefs and oral arguments here, the Court assumes that AE, Southeast, and Alabama are all subsidiaries also. While not formally presenting evidence on the matter, the parties seem to agree that at least in the case of Southeast and Alabama plaintiff could not have obtained jurisdiction over them in Hawaii, except by voluntary consent. Defendants, however, claim that the subsidiaries are in privity with GTE, and thus should have the benefit of any res judicata ruling in favor of GTE.

In drawing the boundary outlining the outer reach of this res judicata decision, one must look to the prior action in order to see who could have been bound

had plaintiff not split its cause of action. The rule is:

> It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process. . . . The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant. (*Zenith I, supra,* 395 U.S. at 110, 89 S.Ct. at 1569, 23 L.Ed.2d at 140.)

Since none of the subsidiaries were named parties in the Hawaii action, they would not have been necessarily bound by a treble-damage judgment in that case.

However, the doctrine of res judicata applies not only to named defendants in a prior action, but also to their privies. Pan American Match Inc. v. Sears, Roebuck and Co., 454 F.2d 871 (1st Cir. 1972), cert. denied, 409 U.S. 892, 93 S.Ct. 113, 34 L.Ed.2d 149 (1972). Yet, the mere fact that GTE owns the stock of the subsidiaries does not alone establish privity between the party defendants. The parties have not presented evidence nor informed the court of whether the subsidiaries were ever named as parties in the Hawaii action or served with process; or whether they are alter egos with GTE; or whether they participated in, or GTE controlled on their behalf, the litigation in the Hawaii action. *Zenith I, supra,* 395 U.S. at 110–112, 89 S.Ct. at 1569–1570, 23 L.Ed.2d at 140–141. This factual void makes it impossible to rule on the question of privity. Also, since plaintiff may not have had jurisdiction to sue one or more of the subsidiaries for damage in Hawaii, this makes it difficult for the Court to give the subsidiaries the benefit of the res judicata ruling, unless privity be fully litigated and established.

The parties in an antitrust action must realize that seldom can all the damage claims against all tortfeasors be settled in one suit. While injunctions issued by a federal court can bind not only named defendants but also those who receive notice and are in active concert or participation with the defendants (see *Zenith I, supra,* 395 U.S. at 112, 89 S.Ct. at 1570, 23 L.Ed.2d at 141–142), the same cannot be said of damage judgments. In bringing a treble-damage claim under the Clayton Act, the plaintiff can be expected to have to sue in different states if he wishes to obtain a judgment against all joint tortfeasors. See *Zenith II, supra,* 401 U.S. at 346–347, 91 S.Ct. at 810, 28 L.Ed.2d at 96–97. In light of this, and due to the failure to show privity, the defendant subsidiaries have not shown any unusual circumstances in the present action which would call for the application of res judicata for their benefit.

While plaintiff has had its one fair day in court against GTE, the same cannot be said in regard to GTE Service, AE, Southeast, and Alabama. Therefore, an order dismissing plaintiff's claim will be entered only as to GTE.