USCA1 Opinion

 

 June 23, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _____ No. 92-2108 UNITED STATES OF AMERICA, Plaintiff, Appellant, v. AMERICAN HEART RESEARCH FOUNDATION, INC., ET AL., Defendants, Appellees. ___________ ERRATA SHEET The opinion of this Court issued on June 18, 1993, is amended as follows: On page 9, line 1: insert a comma between "understanding" and the quotation mark that immediately follows. UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 92-2108 UNITED STATES OF AMERICA, Plaintiff, Appellant, v. AMERICAN HEART RESEARCH FOUNDATION, INC., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Norman H. Stahl, U. S. District Judge] ____________________ ____________________ Before Cyr, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Paul D. Scott, Attorney, Department of Justice, with whom Stuart ______________ ______ M. Gerson, Assistant Attorney General, Jeffrey R. Howard, United _ ________ __________________ States Attorney, Douglas N. Letter, Attorney, Department of Justice, _________________ Michael F. Hertz, Attorney, Department of Justice, and Steven D. __________ _______ _________ Altman, Attorney, Department of Justice, were on brief for appellant. ______ Kenneth I. Schacter with whom David M. Cohen, Richards & O'Neil, ___________________ _______________ __________________ David Jordan and Jordan & Gfroerer were on brief for appellees. ____________ _________________ ____________________ June 18, 1993 ____________________ BOUDIN, Circuit Judge. In this case, involving the _____________ underpayment of postage based on misrepresentations, the district court ruled that the False Claims Act, 31 U.S.C. 3729, did not (prior to its amendment in 1986) apply to so- called "reverse false claims" whereby the government is paid less than its due. A back-up claim for unjust enrichment was dismissed on res judicata grounds. We agree with the ____________ district court on the interpretation of the False Claims Act but disagree that the unjust enrichment claim was barred by res judicata. Accordingly, we affirm in part and vacate and _____________ remand in part. The facts can be briefly stated. Robert Paltrow in 1983-1984 set up two corporations--American Heart Research Foundation, Inc. ("AHRF") and American Cancer Research Funds, Inc. ("ACRF")--purportedly to promote research to cure these diseases. In July 1984 Paltrow submitted an application to the United States Postal Service to obtain for ACRF a reduced-rate mailing permit; the application represented that ACRF was a scientific non-profit entity helping to cure cancer. ACRF used the permit to mail millions of letters soliciting for funds. AHRF, without applying for its own permit, used ACRF's permit for its own solicitations. A direct mail organization controlled by Paltrow, North American Communications, Inc. ("NAC"), conducted the -2- -2- mailings. As a result of the special permit, the postage was approximately one-half the usual rate for bulk third class mail, and ACRF and AHRF paid the Postal Service about $472,000 less than they would have without the special permit. In fact ACRF and AHRF were not non-profit scientific or charitable organizations but were old-fashioned swindles, raising money on charitable pretexts for the benefit of the organizers. In addition to raising funds, ACRF sent out purported scientific surveys, of no scientific value, apparently to gull the public into taking ACRF seriously. Needless to say, the application ACRF filed with the Postal Service, making the necessary claim that it was a qualified non-profit organization under the applicable regulations, was false. AHRF's mailings were based on the fraudulently obtained ACRF permit. The solicitations occurred in 1984 and 1985. In spring 1986, the government filed a criminal information against ACRF and AHRF asserting ten counts of mail fraud under 18 U.S.C. 1341; NAC and Paltrow were named in the criminal information as participating in the scheme but were not separately charged. The government also filed a complaint for injunctive relief under 18 U.S.C. 1345. That section gives the government a civil action for expedited injunctive -3- -3- relief where mail fraud is occurring or is threatened. No damage claim was asserted in this action. In April 1986 Paltrow pleaded ACRF and AHRF guilty on all ten counts of mail fraud in the criminal case, and he admitted that he and NAC employed ACRF and AHRF to defraud the public. The civil injunction action was resolved on the same day by a consent order enjoining Paltrow and all three entities from charitable fund-raising through the mails. A $100,000 criminal fine was imposed on the bogus charities and the court ordered that the funds fraudulently obtained be turned over to legitimate charities. In 1990, after some preliminary negotiations failed, the government filed the present case under the False Claims Act against Paltrow and his three entities. The suit claimed underpayment of postage in the amount of $472,478 and multiple damages as provided by the statute. In the alternative, the government sought single damages on an unjust enrichment theory. On cross-motions for summary judgment, the district court dismissed the False Claims Act claims on the ground that the statute did not apply, and it dismissed the unjust enrichment claim on res judicata _____________ grounds. We agree with the district court's well reasoned treatment of the False Claims Act. The statute, prior to the -4- -4- 1986 amendments, provided the government with a double-damage civil action against anyone who (1) knowingly presents . . . to . . . the [United States] Government . . . a false or fraudulent claim for payment or approval; [or] (2) knowingly makes . . . a false record or statement to get a false or fraudulent claim paid or approved[.] 31 U.S.C. 3729(a)(1), (2). In 1986, the statute was amended not only to provide for treble damages but also to apply to one who knowingly uses "a false record or statement" in order to "conceal, avoid, or decrease an obligation to pay . . . money . . . to the Government."1 31 U.S.C. 3729(a)(7). The current version of the False Claims Act clearly embraces reverse false claims, such as that presented in this case, whereby someone uses a false statement to secure services from the government at a reduced rate. But the government on this appeal has not pursued its contention, rejected by the district court, that the 1986 amendment enacting section 3729(a)(7) applies retroactively. Thus the question is whether securing reduced rate mailing privileges by dint of a false statement can be classed as presenting "a ____________________ 1False Claims Amendments Act of 1986, Pub. L. No. 99- 562, 100 Stat. 3153 (1986), adding inter alia section ___________ 3729(a)(7) which employs the quoted language. See generally _____________ S. Rep. No. 345, 99th Cong., 2d Sess. (1986). -5- -5- false or fraudulent claim for payment or approval" or making a false statement to get such a "claim" paid or approved. We think the natural weight of the words, properly the starting point for the inquiry, leans against the government's reading. A "claim for payment or approval" sounds to ordinary ears like a bill from an army supplier for uniforms or some like invoice presented for payment or for approval to permit payment. The False Claims Act was in fact enacted in 1863 in the wake of scandal to "combat rampant fraud in Civil War defense contracts." S. Rep. No. 345, supra, at 8. An attempt to secure services from the _____ government at reduced rates may be just as fraudulent, but at least judged by "normal usage or understanding," United ______ States v. McNinch, 356 U.S. 595, 598 (1958), it is not a ______ _______ "claim for payment or approval" of payment.2 In McNinch, the Supreme Court held that an application _______ for credit insurance, requesting the Federal Housing Administration to insure certain bank loans, was not a "claim for payment or approval" within the meaning of the statute. Quoting a lower court decision, the Court said that a "claim" against the government "normally connotes a demand for money ____________________ 2The original 1863 statute reinforces this point. Its language spoke of presenting "for payment or approval . . . any claim upon or against the Government . . . ." Act of _______________________________ Mar. 2, 1863, c. 67, 12 Stat. 696. The underscored phrase was omitted in a subsequent revision but without any intent to alter substance. 31 U.S.C. 3729 (1982) (see explanatory ___ note). -6- -6- or for some transfer of public property," adding that the statute "was not designed to reach every kind of fraud practiced on the Government." Id. at 599. If McNinch stood ___ _______ alone, it would resolve our case, for a customer's underpayment for postal services does not involve any payment by the government or transfer of its property. As is often the case, there is a contrapuntal theme in the case law. United States v. Neifert-White Co., 390 U.S. _____________ _________________ 228 (1968), held that the False Claims Act did apply to a falsified loan application made to a federal agency where, unlike McNinch, the false statement was made "with the _______ purpose and effect of inducing the Government immediately to part with money." Id. at 232. Neifert-White said broadly ___ _____________ that "the Act was intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." Id. (footnote omitted). While this ___ language is helpful to the government in the abstract, we read it as directed to the subject of the Court's discussion, namely, claims, however unconventional, asking the government immediately "to part with money." Id.3 ___ ____________________ 3Not only did the Court make its broad statement immediately after distinguishing McNinch on the ground that _______ it involved no payment of government money, but two paragraphs later, in the course of summing up, the Court repeated the point: "This remedial statute [the False Claims Act] reaches beyond `claims' which might be legally enforced, to all fraudulent attempts to cause the Government to pay out __________ sums of money." Id. at 233 (emphasis added). _____________ ___ -7- -7- Subsequent to Neifert-White, the Supreme Court quoted _____________ with approval, albeit in a footnote, its statement in McNinch _______ that "claim" in the statute normally connotes "a demand for money or for some transfer of public property." United ______ States v. Bornstein, 423 U.S. 303, 309 n.4 (1976). This ______ _________ reiterated equating of "claim" with a demand for money or property is fatal to the government's position here: securing a reduced rate for mailing, even by false statements, is not a claim for money or property. In the federal hierarchy, a footnote in a Supreme Court opinion normally outweighs a covey of lower court decisions. The lower courts are, in any event, divided as to whether the pre-1986 False Claims Act could be stretched to include reverse false claims. Compare, e.g., United States v. _____________ ______________ Lawson, 522 F. Supp. 746 (D.N.J. 1981), with United States v. ______ ____ _____________ Douglas, 626 F. Supp. 621 (E.D. Va. 1985). _______ The government is correct that the Senate Report issued when the statute was expanded in 1986 took the position that the statute had always embraced underpayments and that the new language merely clarified the statute. See S. Rep. No. ___ 345, supra, at 19. We are reluctant, however, to give much _____ weight in construing a Civil War statute to Committee views first expressed over 100 years later. This is especially so when, as here, the original language of the Civil War statute ________ was even more favorable to the construction that we adopt -8- -8- than the pared down version later adopted with no intent to alter substance. No doubt the effect of fraud on the government is pretty much the same whether too much is extracted from the federal treasury or too little paid in. That is why Congress amended the statute in 1986. But it is one thing to construe ambiguous language broadly in accord with a remedial purpose; it is quite another matter to stretch language beyond "normal usage or understanding," McNinch, 356 U.S. at 598, when the _______ natural reading matches the very problem that concerned Congress at the time the statute was enacted. When the Supreme Court has thrice affirmed that natural reading and emphasized that a "claim" in this context refers to one for money or property, we think that all doubts vanish as to the course this court should follow. We turn now to the government's alternative remedy--its claim for single damages based on an unjust enrichment theory--and here our views differ from those of the able district judge. The district court held that the "claim preclusion" branch of res judicata barred the government from ____________ asserting an unjust enrichment claim after it secured a final judgment in its civil injunction action involving the same transactions. We conclude that for reasons peculiar to the civil injunction statute, a successful action brought under -9- -9- that statute does not preclude a later separate claim by the government for monetary relief. Claim preclusion, formerly the merger or bar aspect of res judicata, precludes a party who has won or lost a case on ____________ the merits from reasserting the same cause of action in a subsequent case. In some jurisdictions, this doctrine has been expanded so that a final judgment on the merits extinguishes any further "rights of the plaintiff to remedies against the [same] defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the [earlier] action arose." Restatement (Second) ____________________ of Judgments 24 (1982). See Diversified Foods, Inc. v. ____________ ___ _______________________ First National Bank of Boston, 985 F.2d 27, 30 (1st Cir. _______________________________ 1993). This broader definition, which converts old fashioned res judicata doctrine into a kind of compulsory joinder of ____________ related claims, was adopted by this court in Manego v. ______ Orleans Board of Trade, 773 F.2d 1, 5 (1st Cir. 1985), cert. ______________________ _____ denied, 475 U.S. 1084 (1986), for cases where federal law ______ controls the issue. Under ordinary circumstances, Manego and Section 24 of ______ the Restatement would pose a formidable obstacle to the government's unjust enrichment claim brought after its successful injunction action. The parties are identical in the two actions, both actions were civil, and the injunction action resulted in a final judgment on the merits. Finally, -10- -10- the two remedies--an injunction and the disgorgement of unjust enrichment--are premised on the same transaction or series of transactions, and that is normally enough where the transactions test of Manego is followed. ______ Res judicata is nevertheless a judge-made doctrine based ____________ upon practical concerns: hostility to relitigation, wariness about double recovery, and anxiety that resources will be wasted by successive suits where one would have sufficed. The doctrine is not to be applied where other practical concerns outweigh the traditional ones and favor separate actions. See, e.g., Brown v. Felsen, 442 U.S. 127 (1979). _________ _____ ______ Here, we believe that those other concerns counsel strongly in favor of allowing the government to bring a damage action, whatever the underlying theory, even though the government brought and concluded a separate injunction action under 18 U.S.C. 1345. The purpose of section 1345 is "to allow the Attorney General to put a speedy end to a fraud scheme by seeking an __________ injunction in federal district court" as soon as the requisite evidence is secured. S. Rep. No. 225, 98th Cong., 2d Sess. 402 (1984) (emphasis added). The statute itself directs the district court to "proceed as soon as practicable" to a hearing and determination. 18 U.S.C. 1345(b). The legislative history shows that Congress authorized this expedited action precisely because "the -11- -11- investigation of fraudulent schemes often takes months, if not years, before the case is ready for criminal prosecution" and in the meantime "innocent people continue to be victimized." S. Rep. No. 225, supra, at 402. _____ The same concerns that prompted Congress to adopt section 1345 suggest that courts should not handicap and delay injunction actions by insisting that the government assert at the same time any civil damage claims that may arise from the same transactions. Commonly the government may want to secure additional facts, including the amount of damages, before asserting such claims and may well wish to negotiate with the defendant as to settlement once the ongoing violation has ceased. To require that the government resolve these matters within, and on the same time table as, the expedited injunction action makes no sense. The government is not automatically exempt from limitations on claim splitting, Federation Dep't Stores v. ________________________ Moitie, 452 U.S. 394, 398 (1981), but those limitations will ______ not be applied where they would frustrate a specific statutory objective. Brown, 442 U.S. at 135-36. See also _____ ________ Restatement (Second) of Judgments 26(1)(d) (1982). For ___________________________________ this reason the government is permitted to enjoin the continuation of an illegal merger or other violation of the antitrust laws and then bring its own separate damage action -12- -12- for any damages it may have suffered.4 In our view the same policy permits the government to litigate an injunction action under section 1345 to final judgment and then bring its own damage action as a separate case. The treatment of the unjust enrichment claim on remand is a matter for the district court. We express no view on whether any aspect of the government's claim may be governed by the issue preclusion (or collateral estoppel) branch of res judicata, nor do we address any other questions that may _____________ be presented by that claim. The judgment of the district court is affirmed so far as it dismissed the government's ________ claims under the False Claims Act, and it is vacated and ___________ remanded as to the claim based on the unjust enrichment ________ theory. It is so ordered. No costs to either side. ________________ ____________________ 4See, e.g., ITT v. GT & E, 369 F. Supp. 316, 326-27 _________ ___ ______ (M.D.N.C. 1973), remanded on other grounds, 527 F.2d 1162 ___________________________ (4th Cir. 1975); United States v. Grinnell Corp., 307 F. ______________ ______________ Supp. 1097 (S.D.N.Y. 1969). See generally II P. Areeda & D. ______________ Turner, Antitrust Law 323, at 109 (1978) ("[T]he equitable _____________ suit in the public interest ought not to be delayed or affected by the government's concern whether or not it should seek proprietary relief as well."). -13- -13-